Arthur I. Willner, State Bar No. 118480
Email: awillner@leaderberkon.com
David Salazar (State Bar No. 310949)
dsalazar@leaderberkon.com
LEADER & BERKON LLP
660 S. Figueroa Street, Suite 1150
Los Angeles, CA 90017
Tel: (213) 234-1750; Fax (213) 234-1747

Marieke Tuthill Beck-Coon (*Pro hac vice application to be filed*)
Email: marieke@thefire.org
Brynne Sasha Madway (*Pro hac vice application to be filed*)
Email: brynne.madway@thefire.org
THE FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473; Fax (215) 717-3440

Attorneys for Plaintiff Kevin A. Shaw

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KEVIN A. SHAW,** | ) Case No.  CV-17-2386 |
| Plaintiff, | ) **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES** |
| vs. | ) |
| **KATHLEEN F. BURKE,** *in her individual and official capacities;* **EARIC DIXON-PETERS,** *in his individual and official capacities;* **WILLIAM A. MARMOLEJO,** *in his individual and official capacities;* **JUAN C. ASTORGA,** *in his individual and official capacities;* **FRANCISCO C. RODRIGUEZ,** *in his official capacity;* | ) **DEMAND FOR TRIAL BY JURY** |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1  **SCOTT J. SVONKIN,** *in his official*
   *capacity;*
2  **SYDNEY K. KAMLAGER,** *in her*
   *official capacity;*
3  **MIKE FONG,** *in his official capacity;*
4  **MIKE ENG,** *in his official capacity;*
   **ANDRA HOFFMAN,** *in her official*
5  *capacity;* **ERNEST H. MORENO,** *in*
   *his official capacity;*
6  **NANCY PEARLMAN,** *in her official*
7  *capacity;* and **JOHN DOE,** *in his*
   *individual and official capacities,*
8
9
        Defendants.
10

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
))

11

12  Plaintiff Kevin Shaw complains of Defendants and alleges as follows:

13  ## I.   INTRODUCTION

14      1.      The Supreme Court has made clear held that "state colleges and

15  universities are not enclaves immune from the sweep of the First Amendment,"

16  *Healy v. James*, 408 U.S. 169, 180 (1972), and that "[w]ith respect to persons

17  entitled to be there, our cases leave no doubt that the First Amendment rights of

18  speech and association extend to the campuses of state universities," *Widmar v.*

19  *Vincent*, 454 U.S. 263, 268 (1981). In defiance of this binding precedent, the Los

20  Angeles Community College District (the "District"), and Los Angeles Pierce

21  College ("Pierce College"), by and through their administrative officials, maintain a

22  complex regime of policies and practices that quarantine students who, like Shaw,

23  wish to exercise their First Amendment rights, to tiny spaces on District campuses.

24  Making matters yet worse, the District and Pierce College force students like Shaw

25  to seek permission from campus administrators before engaging in even the most

26  time-honored forms of speech and expressive activity at the core of First

27  Amendment protections.

28  / / /

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -
**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

2.     The District designates the majority of each of its nine community college campuses as non-public forums. The president of each college is required to create "Free Speech Area(s)," which the District designates as limited public forums. See a true and correct copy of Los Angeles Community College District Board Rule, Chapter IX, Article IX, Freedom of Speech, attached hereto as Exhibit A.

3.     In accordance with this directive, Pierce College, a community college within the District, has implemented its own policies and practices governing free speech and expressive activity, establishing a tiny "Free Speech Area" for speech and expressive activity to take place on its campus. Pierce College's Free Speech Area consists of a small area, confined by painted lines, on the side of a campus thoroughfare. The area measures approximately 616 square feet, comprising approximately .003% of the total area of Pierce College's 426-acre campus. In contravention of its long-established constitutional obligations as a public institution, Pierce College has unreasonably restricted the freedom of expression on its campus to these tiny confines.

4.     Pierce College has also adopted and enforced other policies and practices that severely restrict free speech and expressive activity, including an apparently unpublished requirement that students like Shaw seek and complete a permit application before being granted access to use the tiny Free Speech Area.

5.     Pierce College enforced its policies and practices and the District's policy against Shaw on November 2, 2016, when Defendant John Doe forced Shaw to stop discussing his political views with his fellow students and distributing Spanish-language copies of the United States Constitution outside of the Free Speech Area. Defendant John Doe escorted Shaw into an office where he was forced to complete a permit application to use the Free Speech Area, a copy of which he was not able to retrieve from the administration until weeks later.

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

6. Pierce's rules on applying for such a permit and using the Free Speech Area—attached to the permit application itself and apparently not accessible elsewhere—grant boundless discretion to campus administrators to determine whether students may exercise their First Amendment rights in the sole area of campus that Pierce College has designated to allow expressive activity.

7. This is a civil rights action to protect and vindicate Shaw and his fellow students' right to freedom of expression under the First and Fourteenth Amendments of the United States Constitution. The District and Pierce College's policies and enforcement practices unlawfully restrict these rights. The District and Pierce College's policies and enforcement practices are challenged on their face and as applied to Shaw. This action seeks declaratory and injunctive relief, damages, and attorneys' fees.

## II.    JURISDICTION AND VENUE

8. This action arises under the First and Fourteenth Amendments of the United States Constitution, and the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988.

9. This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

10. This Court has the authority to grant the requested declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

11. This Court has the authority to issue injunctive relief pursuant to 42 U.S.C. § 1983 and Federal Rule of Civil Procedure 65.

12. This Court has the authority to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

13. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b) because the events giving rise

to the instant claim occurred within this district and because at least one Defendant resides in this District.

### III.   PLAINTIFF

14.   Plaintiff Kevin Shaw is, and was at all times relevant to this Complaint, a resident of Los Angeles County, California, and a student at Pierce College pursuing an associate degree. Shaw is the president of the Pierce College chapter of Young Americans for Liberty, an unrecognized "pro-liberty" student organization affiliated with the national organization of the same name which has chapters on college campuses nationwide.

### IV.   DEFENDANTS

15.   Defendant Kathleen F. Burke is, and was at all times relevant to this Complaint, the President of Pierce College. Defendant Burke is responsible for the implementation of the rules and policies promulgated by the District Board of Trustees and policymaking, administration, and enforcement of the college's policies and procedures, including those that were applied to deprive Shaw of his constitutional rights. Defendant Burke acted under the color of state law and is sued in her individual and official capacities.

16.   Defendant Earic Dixon-Peters is, and was at all times relevant to this Complaint, the Vice President of Student Services at Pierce College. Defendant Dixon-Peters is responsible for policymaking, administration, and enforcement of the college's policies and procedures, including those that were applied to deprive Shaw of his constitutional rights. Defendant Dixon-Peters acted under the color of state law and is sued in his individual and official capacities.

17.   William A. Marmolejo is, and was at all times relevant to this Complaint, Dean of Student Services at Pierce College. Defendant Marmolejo is responsible for policymaking, administration, and enforcement of the college's policies and procedures, including those that were applied to deprive Shaw of his

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1  constitutional rights. Defendant Marmolejo acted under the color of state law and is

2  sued in his individual and official capacities.

3      18.    Defendant Juan C. Astorga is, and was at all times relevant to this

4  Complaint, the Dean of Student Engagement at Pierce College. He is responsible

5  for the administration and enforcement of the policies and practices governing the

6  Free Speech Area, including the policies and practices governing its use that were

7  applied to deprive Shaw of his constitutional rights. Defendant Astorga acted under

8  the color of state law and is sued in his individual and official capacities.

9      19.    Defendant Francisco C. Rodriguez is, and was at all times relevant to

10  this Complaint, the Chancellor of the District. Defendant Rodriguez has oversight

11  of Defendant Burke and is responsible for implementing the policies, rules, and

12  regulations of the District's Board of Trustees, including those applied to deprive

13  Shaw of his constitutional rights. Defendant Rodriguez acted under the color of

14  state law and is sued in his official capacity.

15      20.    Defendant Scott J. Svonkin is, and was at all times relevant to this

16  Complaint, the President of the Board of Trustees of the District, which has

17  policymaking authority over the District-wide policies and procedures that were

18  applied to deprive Shaw of his constitutional rights. The Board of Trustees of the

19  District is responsible for establishing rules and regulations that govern the

20  operation of Pierce College and all other District campuses. Defendant Svonkin

21  acted under the color of state law and is sued in his official capacity.

22      21.    Defendant Sydney K. Kamlager is, and was at all times relevant to this

23  Complaint, the First Vice President of the Board of Trustees of the District, which

24  has policymaking authority over the District-wide policies and procedures that were

25  applied to deprive Shaw of his constitutional rights. The Board of Trustees of the

26  District is responsible for establishing rules and regulations that govern the

27  / / /

28

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1  operation of Pierce College. Defendant Kamlager acted under the color of state law
2  and is sued in her official capacity.

3      22.     Defendant Mike Fong is, and was at all times relevant to this
4  Complaint, the Second Vice President of the Board of Trustees of the District,
5  which has policymaking authority over the District-wide policies and procedures
6  that were applied to deprive Shaw of his constitutional rights. The Board of
7  Trustees of the District is responsible for establishing rules and regulations that
8  govern the operation of Pierce College. Defendant Fong acted under the color of
9  state law and is sued in his official capacity.

10     23.     Defendant Mike Eng is, and was at all times relevant to this
11 Complaint, a member of the Board of Trustees of the District, which has
12 policymaking authority over the District-wide policies and procedures that were
13 applied to deprive Shaw of his constitutional rights. The Board of Trustees of the
14 District is responsible for establishing rules and regulations that govern the
15 operation of Pierce College. Defendant Eng acted under the color of state law and is
16 sued in his official capacity.

17     24.     Defendant Andra Hoffman is, and was at all times relevant to this
18 Complaint, a member of the Board of Trustees of the District, which has
19 policymaking authority over the District-wide policies and procedures that were
20 applied to deprive Shaw of his constitutional rights. The Board of Trustees of the
21 District is responsible for establishing rules and regulations that govern the
22 operation of Pierce College. Defendant Hoffman acted under the color of state law
23 and is sued in her official capacity.

24     25.     Defendant Ernest H. Moreno is, and was at all times relevant to this
25 Complaint, a member of the Board of Trustees of the District, which has
26 policymaking authority over the District-wide policies and procedures that were
27 applied to deprive Shaw of his constitutional rights. The Board of Trustees of the
28

District is responsible for establishing rules and regulations that govern the operation of Pierce College. Defendant Moreno acted under the color of state law and is sued in his official capacity.

26.     Defendant Nancy Pearlman is, and was at all times relevant to this Complaint, a member of the Board of Trustees of the District, which has policymaking authority over the District-wide policies and procedures that were applied to deprive Shaw of his constitutional rights. The Board of Trustees of the District is responsible for establishing rules and regulations that govern the operation of Pierce College. Defendant Pearlman acted under the color of state law and is sued in her official capacity.

27.     Defendant John Doe is an employee of Pierce College who interfered with Shaw's ability to exercise his constitutional right to freedom of expression on November 2, 2016, when he forced Shaw to stop discussing his political views with his fellow students and distributing Spanish-language copies of the Constitution outside of the Free Speech Area, informed him that he would be asked to leave campus if he continued, and escorted him to complete a permit application to use the Free Speech Area. Defendant John Doe acted under the color of state law and is sued in his individual and official capacities.

## V.     STATEMENT OF FACTS

### A.     The District Free Speech Policy.

28.     The District consists of nine community colleges and has a total of enrollment of more than 150,000 students.

29.     The District is governed by an elected Board of Trustees and managed by Defendant Rodriguez, the District Chancellor.

30.     The Board of Trustees promulgates and maintains a series of Board Rules that are binding on the community colleges within the District.

/ / /

31.     Among the Board Rules is, and was at all times relevant to this Complaint, Los Angeles Community College District Board Rule, Chapter IX, Article IX, Freedom of Speech (hereinafter the "District Free Speech Policy"). See Exhibit A.

32.     Upon information and belief, the District adopted the terms of the District Free Speech Policy in their current form on or about April 20, 1989.

33.     Upon information and belief, the Board of Trustees amended the District Free Speech Policy without any substantive changes on or about December 7, 2016.

34.     The District Free Speech Policy consists of numerous rules that govern the freedom of expression of students, staff, faculty members, and people who are not members of the college community on the District colleges' campuses.

35.     District Free Speech Policy Rule 9901 ("Rule 9901") states:

> The colleges of the Los Angeles Community College District are non-public forums, except for those portions of each college designated as Free Speech Areas are hereby designated as limited public forums, which designation may be removed and reverted to non-public forum designation by the Board of Trustees

36.     District Free Speech Policy Rule 9902 ("Rule 9902") states:

> The college president shall designate an area or areas on the college campus as areas for free discussion and expression by all persons. A Free Speech Area may only be located where there is a normal flow of student traffic with unlimited accessibility. Necessary campus rules governing the operation of such areas shall govern only the time, place and manner in which said areas are to be used.

37.     District Free Speech Policy Rule 9902.11 ("Rule 9902.11") restricts the distribution of literature, including "petitions, circulars, leaflets, newspapers, miscellaneous printed matter and other materials," to "the geographical limits of the Free Speech Area" on each campus.

38.     District Free Speech Policy Rule 9902.13 permits the president of each college to set "reasonable time restrictions on the use of the Free Speech Area, in

1    order to ensure that all persons are given equal access to the use of the Free Speech
2    Area." Rule 9902.13 further states: "The times at which the Free Speech Area may
3    be used shall be subject to reasonable campus regulations."

4        39.    District Free Speech Policy Rule 9903 permits the college presidents
5    to designate areas outside of the Free Speech Areas "where students, faculty and
6    staff may exercise freedom of expression subject only to reasonable time, place and
7    manner restrictions."

8    **B.    Pierce College's Free Speech Area Policy and Practices.**

9        40.    Upon information and belief, Pierce College does not, and at all times
10   relevant to this Complaint did not, publish rules or regulations regarding free
11   speech or expressive activity specific to its campus on its website, on its student
12   portal website, or in a student handbook or other student policy manual. Students,
13   therefore, have no public, generally accessible means to discern any restrictions to
14   which they are subject or under which they could be punished for engaging in
15   speech or expressive activity on Pierce College's campus.

16       41.    Upon information and belief, Pierce College administrators have
17   nonetheless internally designated one small "Free Speech Area" on campus for
18   speech, expressive activity, and distribution of literature on campus, pursuant to
19   District Free Speech Policy Rules 9901 and 9902.

20       42.    The Free Speech Area is indicated on Pierce College's online campus
21   map with the words "Free Speech," but the map fails to indicate that speech,
22   expressive activity, and distribution of literature on campus are restricted to this
23   area.  See a true and correct copy of Pierce College's Online Campus Map, attached
24   hereto as Exhibit B.

25       43.    Rules regarding use of the Free Speech Area, and the restriction of
26   speech, expressive activity, and distribution of literature to that Area, are printed on
27   applications for use of the Area and are titled "Rules for Distribution of Material

28

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

and use of Free Speech Areas Off-Campus Entities" (the "Pierce College Free Speech Area Policy"). See a true and correct copy of Pierce College Application for use at Free Speech Area, attached as Exhibit C.

44. Shaw became aware of the Pierce College Free Speech Area Policy only when he was prevented by Defendant John Doe from distributing literature and speaking to students outside the Free Speech Area and was required to fill out a permit application with the attached Pierce College Free Speech Area Policy.

45. The Pierce College Free Speech Area Policy states that "[t]here is one (1) area designated for free speech and gathering of signatures." This designated Free Speech Area "is located on the Mall within the red and black dotted lines."

46. The Free Speech Area delineated "on the Mall within the red and black dotted lines" is approximately 616 square feet, comprising approximately .003% of the total area of Pierce College's 426 acres, and approximately .007% of the main area of campus featured in Pierce's online campus map (attached as Exhibit B), which excludes the approximately 226-acre farm dedicated to Pierce's agricultural and equestrian programs.

47. The Pierce College Free Speech Area Policy states that "[t]he distribution of material/obtaining of signatures shall be allowed from 9:00am until 7:30pm, Monday through Friday."

48. The Pierce College Free Speech Area Policy states:

Individuals planning to distribute material on campus are required to go to the Vice President of Student Services Office located on the third floor of the Student Services Building between the hours of 9:00am and 4:00pm to:

1. Report his/her presence on campus

2. Identify the organization and give the names(s) of the distributor(s) and address of the organization

3. Indicate how many people will be distributing along with the date(s) and time(s) of distribution

/ / /

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

49.   The Pierce College Free Speech Area Policy incorporates the language of District Free Speech Policy Rule 9902.11 restricting the distribution of literature, including "petitions, circulars, leaflets, newspapers, miscellaneous printed matter and other materials," to "the geographical limits of the Free Speech Area."

50.   On its face, the Pierce College Free Speech Area Policy does not limit the discretion of the Vice President of Student Services Office, or other administrators responsible for its enforcement, to deny or approve an application because of the content or viewpoint of the speaker's intended message.

51.   The Free Speech Area at Pierce College is not open to spontaneous or anonymous speech because individuals must fill out an application for use of the space and identify themselves and their organizations prior to accessing the Free Speech Area.

52.   By requiring a permit application prior to accessing the Free Speech Area, and by prohibiting expressive activity and distribution of literature outside of the Free Speech Area, the Pierce College Free Speech Area Policy imposes a prior restraint on the freedom of expression of all Pierce College students.

53.   Upon information and belief, Pierce College has no other areas for free expression designated by the college president under District Free Speech Policy Rules 9902 or 9903.

54.   The Pierce College campus has many open areas and sidewalks beyond the Free Speech Area where student speech, expressive activity, and distribution of literature would not interfere with or disturb access to college buildings or sidewalks, impede vehicular or pedestrian traffic, or in any way substantially disrupt the operations of the campus or the college's educational functions.

55.   The Standards of Student Conduct printed in each Pierce College Schedule of Classes notify students that their conduct must conform to District and college rules and regulations. It further notifies students that violations of such rules

1   and regulations may result in disciplinary action, including violations of Los

2   Angeles County Community College District Board Rule 9803.11, which prohibits

3   "[v]iolation of college rules and regulations including those concerning student

4   organizations, the use of college facilities, or the time, place, and manner of public

5   expression or distribution of materials."

6   **C.    The Pierce College Defendants Prevented Shaw from Exercising His**

7   **Rights in Violation of the Constitution of the United States.**

8   56.    On November 2, 2016, Shaw and two field representatives from

9   Young Americans for Liberty, a national pro-liberty organization, sought to

10  distribute Spanish-language copies of the United States Constitution and discuss

11  issues pertaining to freedom of speech with Pierce College students.

12  57.    Shaw and the representatives from Young Americans for Liberty set

13  up a small folding table outside of the Free Speech Area on the Pierce College

14  Mall, to the side of the large thoroughfare called "the Mall."

15  58.    Shaw and the two representatives intended to discuss their political

16  beliefs with students on the Pierce College campus. They were not disrupting

17  campus operations or interfering with foot traffic.

18  59.    Shortly after arriving on the Mall, they were approached by Defendant

19  John Doe.

20  60.    Defendant John Doe informed Shaw that he was in violation of Pierce

21  College's Free Speech Area Policy and that he was not permitted to engage in his

22  chosen expressive activity outside the Free Speech Area, and Doe insisted that

23  Shaw accompany him into a building so that Shaw could complete a permit

24  application for use of the Free Speech Area.

25  61.    When Shaw asked Defendant John Doe what would happen if he

26  refused to accompany him into the building and continued his expressive activity in

27  his current location, he was told that he would be asked to leave the campus.

28

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

62.     Once inside the Associated Student Organization ("ASO") office, Defendant John Doe prompted Shaw to fill out and sign a permit application, which included the rules and restrictions contained in the Pierce College Free Speech Area Policy, as described above (attached as Exhibit B).

63.     Shaw requested a copy of the signed permit application. However, Defendant John Doe refused to provide him with a copy of the permit application that he had filled out and signed.

64.     On November 11, 2016, Shaw emailed Defendant Astorga and informed him that he intended to gather signatures outside of the Free Speech Area for the purpose of encouraging Pierce College to adopt a free speech policy statement produced by the Committee on Freedom of Expression at the University of Chicago.

65.     In his email, Shaw informed Defendant Astorga that he would not block access to Pierce College buildings, use amplified sound, or otherwise disrupt Pierce College's operations.

66.     On or about November 16, 2016, Shaw again attempted to distribute materials outside of the Free Speech Area. After distributing materials for several hours in an open, grassy area of campus outside of the Free Speech Area without encountering Defendant John Doe or any other administrator, Shaw observed a large protest that formed outside of the Free Speech Area to protest the election of then-President-Elect Donald Trump.

67.     Upon information and belief, Pierce College enforces its Free Speech Area policy selectively and unevenly, allowing speakers at various times to engage in expressive activity and distribute materials outside of the Free Speech Area and enforcing the Free Speech Area policy in other instances.

/ / /

/ / /

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

68.    Throughout November 2016, Shaw made repeated attempts to retrieve a copy of the permit application that he had filled out and signed and the attached Pierce College Free Speech Area Policy from the ASO office.

69.    Several individuals working at the ASO office on the instances Shaw went there to request the documents, including Defendant Joe Doe, refused to provide Shaw with a copy of the Pierce College Free Speech Area Policy or the permit application that he signed.

70.    On November 22, 2016, Shaw emailed Defendant Marmolejo, Pierce College's Dean of Student Services, and asked him for a copy of the Pierce College Free Speech Area Policy.

71.    In his email Shaw also informed Defendant Marmolejo that he was unable to locate a copy of the Pierce College Free Speech Area Policy on the college's website and that he was unable to find a copy of the policy on campus.

72.    Upon information and belief, the Pierce College Free Speech Area Policy is not made available on Pierce College's website, on its student portal website, or in a student handbook or other student policy manual. Copies are made available only in the ASO office or Vice President of Student Services Office.

73.    Instead of responding to Shaw's email, Defendant Marmolejo forwarded the email to Defendant Astorga.

74.    On November 22, 2016, Defendant Astorga replied to Shaw and informed him:

> The use of the Free Speech area is under my purview. I do not recall meeting you or speaking with you in regards to this matter. Can you please describe the person that you interacted with? All individuals that come onto the campus to use the free speech area are asked to fill out a free speech use form. Once that is done a copy of the policy and a permit is handed to each person that comes into our office. Please come see me next time you would like to distribute any materials and I would be more than happy to provide you with the paperwork for you [*sic*].

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1    75.    Shaw responded to Defendant Astorga's email on November 28, 2016,

2    and set up a meeting to discuss the issue on December 1, 2016.

3    76.    On November 30, 2016, Shaw was informed that his meeting with

4    Defendant Astorga was canceled.

5    77.    On December 7, 2016, Shaw stopped by the ASO office in an attempt

6    to obtain a copy of the Pierce College Free Speech Area Policy and the permit

7    application that he signed; however, Defendant John Doe and Geremy Mason, a

8    Senior Secretary in the ASO office, refused to provide Shaw with a copy of the

9    policy.

10   78.    Later that day, Shaw emailed Defendant Astorga to request a copy of

11   the Pierce College Free Speech Area Policy.

12   79.    In this email, Shaw informed Defendant Astorga that he was told by

13   Pierce employees, including Mason and Defendant John Doe, that Defendant

14   Astorga had directed them not to provide Shaw with a copy of the Pierce College

15   Free Speech Area Policy and permit application that he had signed.

16   80.    On December 8, 2016, Shaw again stopped by the ASO office to

17   attempt to meet with Defendant Astorga and pick up a copy of the Pierce College

18   Free Speech Area Policy and permit application that he had signed. At that time,

19   Mason again told Shaw that he was not permitted to give Shaw a copy of the

20   policy.

21   81.    Shaw refused to leave without a copy of the policy and application,

22   prompting Mason to call Defendant Astorga on his cellular telephone.

23   82.    Defendant Astorga told Shaw over the telephone that he had not

24   instructed Mason or Defendant John Doe to refuse to provide Shaw with a copy of

25   the policy and his signed permit application.

26   / / /

27   / / /

28

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

83.     At that time, Defendant Astorga told Shaw that he had told Mason and Defendant John Doe not to provide Shaw with a copy of the Pierce College Free Speech Area Policy unless Defendant Astorga was there.

84.     Over the telephone, Defendant Astorga directed Mason to provide Shaw with a copy of the Pierce College Free Speech Area Policy and his signed permit application.

85.     Mason provided Shaw with a copy of the Pierce College Free Speech Area Policy and his signed permit application. See Exhibit C.

86.     Upon information and belief, no rules other than the Free Speech Area Policy govern use of Pierce College's Free Speech Area.

87.     Pierce College's policies and practices regarding student speech, expressive activity, and distribution of literature on campus have a chilling effect on Shaw's rights and those of all other Pierce students to engage freely and openly in such expressive activity.

88.     Shaw wishes to engage in expressive activity on campus, including petitioning for signatures and distribution of literature, without seeking prior permission or being limited to a tiny 616-square-foot space comprising less than .003% of campus. Shaw is fearful of punishment for taking his chances in simply exercising his First Amendment rights outside the Free Speech Area and hoping he does not run into an administrator charged with enforcing the Pierce College Free Speech Area Policy, who might charge him with a violation under the Standards of Student Conduct or contact the sheriff's office to remove him from campus.

/ / /

/ / /

/ / /

/ / /

/ / /

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

# VI.    CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Violation of the Right to Freedom of Speech Under the First and Fourteenth Amendments (42 U.S.C. § 1983) District Free Speech Policy (Defendants Rodriguez, Svonkin, Kamlager, Fong, Eng, Hoffman, Moreno, and Pearlman)

89.    Shaw repeats and realleges each of the foregoing paragraphs in this Complaint.

90.    The First and Fourteenth Amendments extend to the campuses of state colleges and universities. *See Healy*, 408 U.S. at 180. "With respect to persons entitled to be there, our cases leave no doubt that the First Amendment rights of speech and association extend to the campuses of state universities." *Widmar*, 454 U.S. at 268.

91.    The District Board of Trustees cannot legally declare the vast majority of public areas of District community college campuses to be "non-public forums." *Khademi v. S. Orange Cty. Cmty. Coll. Dist.*, 194 F. Supp. 2d 1011 (C.D. Cal. 2002). Moreover, the District Board of Trustees cannot legally declare public areas of campuses designated as Free Speech Areas to be limited public forums, at least with respect to students and other university community members. *Roberts v. Haragan*, 346 F. Supp. 2d 853, 862 (S.D. Tex. 2004).

92.    Defendants Rodriguez, Svonkin, Kamlager, Fong, Eng, Hoffman, Moreno, and Pearlman have promulgated and enforced a District-wide policy that explicitly designates the vast majority of Pierce College's campus a non-public forum; requires college presidents to identify specific areas for expressive activity, which it designates as limited public forums; and limits expressive activity, including distribution of literature, to those areas.  The result is that protected

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

1   expression is quarantined to small areas of District campuses, including at Pierce

2   College.

3       93.     To pass constitutional muster, time, place, and manner restrictions

4   must be "justified without reference to the content of the regulated speech" and

5   "narrowly tailored to serve a significant governmental interest," and they must

6   "leave open ample alternative channels for communication of the information."

7   *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

8       94.     Restricting all student expressive activity and distribution of literature

9   to designated Free Speech Areas impermissibly restricts student expression, does

10   not serve a significant government interest, does not allow ample alternative

11   channels for communication of students' messages, and is unconstitutionally vague

12   and overbroad.

13       95.     Defendants Rodriguez, Svonkin, Kamlager, Fong, Eng, Hoffman,

14   Moreno, and Pearlman's decision to maintain and enforce the District Free Speech

15   Policy directly resulted in the deprivation of Shaw's and other students'

16   constitutional rights under the First and Fourteenth Amendments to the

17   Constitution.

18       96.     The District Free Speech Area Policy is challenged on its face and as

19   applied to Shaw.

20       97.     The denial of constitutional rights is an irreparable injury *per se*, and

21   Shaw is entitled to declaratory and injunctive relief as well as the reasonable costs

22   of this lawsuit, including his reasonable attorneys' fees.

23   / / /

24   / / /

25   / / /

26   / / /

27

28

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -
**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

## SECOND CAUSE OF ACTION

**Facial Challenge to Violation of Shaw's Right to Freedom of Speech Under the First and Fourteenth Amendments (42 U.S.C. § 1983)**
**Pierce College Free Speech Area Policy**
**(Defendants Burke, Dixon-Peters, Marmolejo, and Astorga)**

98.    Shaw repeats and realleges each of the foregoing paragraphs in this Complaint.

99.    To pass constitutional muster, a time, place, and manner restriction must be "justified without reference to the content of the regulated speech" and "narrowly tailored to serve a significant governmental interest," and they must "leave open ample alternative channels for communication of the information." *Clark*, 468 U.S. at 293.

100.   Restricting all First Amendment activity to Pierce College's tiny, designated Free Speech Area impermissibly restricts student expression, does not serve a significant government interest, does not allow ample alternative channels for communication of students' messages, and is unconstitutionally vague and overbroad.

101.   Defendant Burke is responsible for the designation of the Free Speech Area under District Free Speech Policy Rule 9902.

102.   The Pierce College Free Speech Area Policy instructs permit applicants to file applications with the Vice President of Student Services Office over which Defendants Dixon-Peters and Marmolejo have administrative authority.

103.   The use of the Free Speech Area is under Defendant Astorga's purview.

104.   As a legal consequence of the Defendants Burke, Dixon-Peters, Marmolejo, and Astorga's violation of Shaw's and other similarly situated students' First and Fourteenth Amendment rights, as alleged above, all of which are an irreparable injury *per se*, Shaw is entitled to declaratory and injunctive relief,

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1   damages, and the reasonable costs of this lawsuit, including reasonable attorneys'

2   fees.

3   ### THIRD CAUSE OF ACTION

4   **Facial Challenge to Violation of Shaw's Right to Freedom of Speech Under
the First and Fourteenth Amendments (42 U.S.C. § 1983) – Prior Restraint**

5   **Pierce College Free Speech Area Policy**

6   **(Defendants Burke, Dixon-Peters, Marmolejo, and Astorga)**

7   105.   Shaw repeats and realleges each of the foregoing paragraphs in this

8   Complaint.

9   106.   By requiring a permit application prior to accessing the Free Speech

10   Area, and by prohibiting expressive activity and distribution of literature outside of

11   the Free Speech Area, the Pierce College Free Speech Area Policy imposes a prior

12   restraint on the freedom of expression of all Pierce College students.

13   107.   Students have a First Amendment right to engage in expressive

14   activities in the public areas of a state college or university without obtaining

15   advance permission from government officials. *Widmar*, 454 U.S. at 267 n.5;

16   *Papish v. Bd. of Curators of the Univ. of Mo.*, 410 U.S. 667 (1973). Permitting

17   requirements are a prior restraint on speech, and there is a heavy presumption

18   against their constitutionality. *Berger v. City of Seattle*, 569 F.3d 1029, 1037 (9th

19   Cir. 2009); *Jews for Jesus, Inc. v. City Coll. of San Francisco*, 2009 U.S. Dist.

20   LEXIS 1613, at *11–12 (N.D. Cal. Jan. 12, 2009).

21   108.   The Pierce College Free Speech Area Policy contains a permitting

22   requirement that forces all speakers to obtain advance permission from university

23   officials prior to speaking on campus. It is a prior restraint on speech. Pierce

24   College's policies and practices restricting First Amendment activities to the Free

25   Speech Area ensure that all First Amendment activity on campus is subject to a

26   prior restraint.

27   / / /

28

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

109. By requiring that individuals provide their name, affiliation, and contact information, the Pierce College Free Speech Area Policy prohibits individuals from engaging in anonymous speech.

110. The Pierce College Free Speech Area Policy unconstitutionally prohibits students from engaging in spontaneous expression due to the requirement that they seek permission before speaking.

111. The Pierce College Free Speech Area Policy and its practices with respect to expression on campus fail to provide "narrow, objective, and definite standards," *see Shuttlesworth v. Birmingham*, 394 U.S. 147, 150 (1969), which "provide the guideposts that check the licensor and allow courts quickly and easily to determine whether the licensor is discriminating against disfavored speech," *see Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 758 (1988); *see also Seattle Affiliate of the October 22nd Coal. To Stop Police Brutality, Repression & the Criminalization of a Generation v. City of Seattle*, 550 F.3d 788, 799 (9th Cir. 2008).

112. Defendant Burke is responsible for designating and creating the Free Speech Area pursuant to District Free Speech Policy Rule 9902.

113. The Pierce College Free Speech Area Policy instructs permit applicants to file applications with the Vice President of Student Services Office over which Defendants Dixon-Peters and Marmolejo have administrative authority.

114. Defendant Astorga is responsible for enforcing the Pierce College Free Speech Area Policy.

115. As a legal consequence of the Defendants' violation of Shaw's and other similarly situated students' First and Fourteenth Amendment rights, as alleged above, all of which are irreparable injuries *per se*, Shaw is entitled to declaratory and injunctive relief, damages, and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

### FOURTH CAUSE OF ACTION

**As-Applied Violation of Shaw's Right to Freedom of Speech Under the First and Fourteenth Amendments (42 U.S.C. § 1983)**
**Pierce College Free Speech Area Policy and Practices**
**(Defendants Burke, Dixon-Peters, Marmolejo, Astorga, and John Doe)**

116.   Shaw repeats and realleges each of the foregoing paragraphs in this Complaint.

117.   Defendant John Doe enforced the Pierce College Free Speech Area Policy by preventing Shaw from distributing literature or speaking to fellow students about his political views outside of Pierce's Free Speech Area on November 2, 2016.

118.   By preventing Shaw from distributing copies of the U.S. Constitution outside of the Free Speech Area, or speaking to fellow students about his political views, Defendant John Doe chilled Shaw's right to free expression and deprived Shaw of his clearly established rights to freedom of speech and expression secured by the First and Fourteenth Amendments.

119.   Defendant Astorga enforced the Pierce College Free Speech Area Policy by emailing Shaw on November 22, 2016: "All individuals that come onto the campus to use the free speech area are asked to fill out a free speech use form. Once that is done a copy of the policy and a permit is handed to each person that comes into our office.  Please come see me next time you would like to distribute any materials and I would be more than happy to provide you with the paperwork for you [*sic*]."

120.   Defendant Astorga further obstructed Shaw for several weeks from receiving a copy of the permit he had signed on November 2, 2016, or any written copy of the Pierce College Free Speech Area Policy, which is printed on the "free speech use form" to which Astorga's email refers.

/ / /

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -
**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

121.   By instructing Shaw to fill out a "free speech use form" in order to distribute literature on campus and by maintaining and enforcing regulations of student expression that are not publicly available or guided by publicly discernable standards, Defendant Astorga chilled Shaw's right to free expression and deprived Shaw of his clearly established rights to freedom of speech and expression secured by the First and Fourteenth Amendments.

122.   Defendants Burke, Dixon-Peters, Marmolejo, and Astorga have policymaking, administrative, and enforcement authority over Pierce College's policies and practices governing student speech and expressive activity. By designating only a tiny area of campus for speech and distribution of literature, requiring a permit for its use, and failing to provide generally available notice to students regarding such restrictions or any publicly discernable standards guiding those tasked with enforcing them, Defendants should reasonably have known that their actions and inactions would lead to the deprivation of clearly established student rights to freedom of speech and expression secured by the First and Fourteenth Amendments in the manner experienced by Shaw.

123.   Defendants violated Shaw's clearly established constitutional rights, which any reasonable college official should have known, rendering them liable to Shaw under 42 U.S.C. § 1983.

124.   The denial of constitutional rights is an irreparable injury *per se*.

125.   Shaw is entitled to a declaration that Defendants violated his First Amendment rights. Additionally, Shaw is entitled to damages in an amount to be determined by this Court, and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

/ / /

/ / /

/ / /

1

## FIFTH CAUSE OF ACTION

2

3

**As-Applied Violation of Shaw's Right to Freedom of Speech Under the First and Fourteenth Amendments (42 U.S.C. § 1983) – Prior Restraint Pierce College Free Speech Area Policy and Practices (Defendants Burke, Dixon-Peters, Marmolejo, Astorga, and John Doe)**

4

5      126.   Shaw repeats and realleges each of the foregoing paragraphs in this

6   Complaint.

7      127.   By forcing Shaw to stop engaging in expressive activity and requiring

8   him to complete a permit application in order to access the Free Speech Area, as

9   described above, Defendant John Doe imposed a prior restraint on Shaw's speech

10   and expressive activity in violation of his right to freedom of expression under the

11   First and Fourteenth Amendments.

12      128.   By instructing Shaw to fill out a "free speech use form" in order to

13   distribute literature on campus and by maintaining and enforcing regulations of

14   student expression that are not publicly available or guided by publicly discernable

15   standards, as described above, Defendant Astorga chilled Shaw's right to free

16   expression and deprived Shaw of his clearly established rights to freedom of speech

17   and expression secured by the First and Fourteenth Amendments.

18      129.   Defendants Burke, Dixon-Peters, Marmolejo, and Astorga have

19   policymaking, administrative, and enforcement authority over Pierce College's

20   policies and practices governing student speech and expressive activity. As

21   described above, by designating only a tiny area of campus for speech and

22   distribution of literature, requiring a permit for its use, and failing to provide

23   generally available notice to students regarding such restrictions or any publicly

24   discernable standards guiding those tasked with enforcing them, Defendants should

25   reasonably have known that their actions and inactions would lead to the

26   deprivation of clearly established student rights to freedom of speech and

27

28

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

expression secured by the First and Fourteenth Amendments in the manner experienced by Shaw.

130. Defendants violated Shaw's clearly established constitutional rights, of which any reasonable college official should have known, rendering them liable to Shaw under 42 U.S.C. § 1983.

131. The denial of constitutional rights is an irreparable injury *per se*, and Shaw is entitled to declaratory and injunctive relief. Shaw experienced emotional injury as a consequence of being denied his First Amendment rights.

132. Shaw is entitled to a declaration that Defendant John Doe violated his First Amendment rights. Additionally, Shaw is entitled to damages in an amount to be determined by this Court, and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## SIXTH CAUSE OF ACTION

### Declaratory Relief and Injunction (28 U.S.C. § 2201, *et seq.*)
### (all Defendants)

133. Shaw repeats and realleges each of the foregoing paragraphs in this Complaint.

134. An actual controversy has arisen and now exists between Shaw and Defendants concerning his rights under the United States Constitution. A judicial declaration is necessary and appropriate at this time as to Counts I through V above.

135. Shaw desires a judicial determination of his rights against Defendants as they pertain to his right speak, assemble, and distribute literature in the outdoor areas of Pierce College without being subjected to an unconstitutional prior restraint or unreasonable "time, place, and manner" regulations, which are not narrowly tailored to serve a substantial government interest, and which do not leave open alternative channels of communication.

/ / /

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

136.    To prevent further violation of Shaw's constitutional rights by Defendants, it is appropriate and proper that a declaratory judgment issue, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring Pierce College's and the District's policies and practices unconstitutional.

137.    Further, pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that this Court issue a permanent injunction prohibiting Defendants from enforcing their restrictions on Shaw's expressive activities to the extent they are unconstitutional, so as to prevent an ongoing violation of Shaw's constitutional rights. Shaw is suffering from irreparable harm from continued enforcement of the District's and Pierce College's unconstitutional policies and practices. Monetary damages are inadequate to remedy the harm suffered as a result of the deprivation of rights under the First and Fourteenth Amendments, and the balance of equities and public interest both favor a grant of injunctive relief.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kevin Shaw respectfully requests that the Court enter judgment against Defendants and provide Shaw the following relief:

A.    A declaratory judgment stating that the District Free Speech Policy and Pierce College Free Speech Area Policy are unconstitutional facially and as applied and that they violate Shaw's rights as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

B.    A permanent injunction restraining enforcement of Defendants' unconstitutional policies and enforcement practices;

C.    A declaratory judgment that Defendants' censorship of Shaw's expressive activity without prior approval and outside of the Free Speech Area violated his First and Fourteenth Amendment rights;

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1

2

3

4

    D.    Monetary damages in an amount to be determined by the Court to compensate for the Defendants' application of unlawful speech codes to interfere with Shaw's expressive activity without prior approval and outside of the "Free Speech Area";

5

6

7

    E.    Shaw's reasonable costs and expenses of this action, including attorneys' fees, in accordance with 42 U.S.C. § 1988 and other applicable law; and

8

    F.    All other further relief to which Shaw may be entitled.

9  / / /

10 / / /

11 / / /

12 / / /

13 / / /

14 / / /

15 / / /

16 / / /

17 / / /

18 / / /

19 / / /

20 / / /

21

22

23

24

25

26

27

28

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

# VIII. JURY TRIAL

138.   Shaw demands a trial by jury on all claims triable by jury in this cause of action.

DATED:      March 27, 2017               LEADER & BERKON LLP


                                         By: /s/ _____
                                         Arthur I. Willner (State Bar No. 118480)
                                         Email: awillner@leaderberkon.com
                                         David Salazar (State Bar No. 310949)
                                         dsalazar@leaderberkon.com
                                         LEADER & BERKON LLP
                                         660 S. Figueroa Street, Suite 1150
                                         Los Angeles, CA 90017
                                         Tel: (213) 234–1750; Fax (213) 234–1747

                                         Marieke Tuthill Beck-Coon
                                         Email: marieke@thefire.org
                                         Brynne Sasha Madway
                                         Email: brynne.madway@thefire.org
                                         THE FOUNDATION FOR INDIVIDUAL
                                         RIGHTS IN EDUCATION
                                         510 Walnut Street, Suite 1250
                                         Philadelphia, PA 19106
                                         Tel: (215) 717–3473; Fax (215) 717–3440
                                         *Pro hac vice applications to be filed*

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

*KEVIN A. SHAW*

*VS.*

*KATHLEEN BURKE; EARIC DIXON-PETERS; WILLIAM A. MARMOLEJO; JUAN C. ASTORGA; FRANCISCO C. RODRIGUEZ; SCOTT J. SVONKIN; SYDNEY K. KAMLAGER; MIKE FONG; MIKE ENG; ANDRA HOFFMAN; ERNEST H. MORENO; NANCY PEARLMAN*

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

# EXHIBIT A

LOS ANGELES COMMUNITY COLLEGE DISTRICT
**BOARD RULES, CHAPTER IX, ARTICLE IX**
**FREEDOM OF SPEECH**

## 9901.   COLLEGES AS NON-PUBLIC FORUMS.

The colleges of the Los Angeles Community College District are non-public forums, except for those portions of each college designated as Free Speech Areas are hereby designated as limited public forums, which designation may be removed and reverted to non-public forum designation by the Board of Trustees.

## 9902.   FREE SPEECH AREAS.

The college president shall designate an area or areas on the college campus as areas for free discussion and expression by all persons.  A Free Speech Area may only be located where there is a normal flow of student traffic with unlimited accessibility.  Necessary campus rules governing the operation of such areas shall govern only the time, place and manner in which said areas are to be used.  All such rules shall be applied equally and fairly to all persons desiring to use the Free Speech Areas.  No restrictions shall be placed on subject matter, topics or viewpoints expressed in Free Speech Areas.

EC  76120

Historical Note:  Former Board Rule 91103, enacted 3-15-72, repealed 4-20-89.

### 9902.10 Responsibilities of Persons Using Free Speech Areas.

All persons using the Free Speech Area of a college are expected to monitor the content of their speech such that the expression (1) is not obscene, libelous or slanderous according to current legal standards, (2) does not create a clear and present danger of the commission of unlawful acts on community college premises, (3)

**Exhibit A – Page 30**

is not violative of lawful community college regulations, or (4) does not substantially disrupt the orderly operation of the college.  Any person who is found to have expressed speech in violation of this section may be subject to the sanctions applicable respectively to students, staff, faculty or visitors.

EC    76120

Historical Note:  Former Board Rule 91107, enacted 3-15-72, repealed 4-20-89.

## 9902.11  Distribution of Materials.

Persons using a Free Speech Area shall be allowed to distribute petitions, circulars, leaflets, newspapers, miscellaneous printed matter and other materials, subject to the following restrictions:

a.    Such distribution shall take place only within the geographical limits of the Free Speech Area;

b.    Any material being distributed which is discarded or dropped in or around the Free Speech Area other than in an appropriate receptacle must be retrieved and removed or properly discarded by those persons distributing the material prior to their departure from the Free Speech Area that day;

c.    Persons distributing material shall not impede the progress of passersby, nor shall they force or coerce passersby into taking the proffered material.

Historical Note:  Former Board Rule 91106.10, enacted 3-15-72, repealed 4-20-89.

## 9902.12  Forms of Speech.

Persons using a Free Speech Area shall be entitled to exercise their speech privileges in any manner which does not violate the rules of conduct set forth in Article VIII or in this Article, including but not limited to the use of printed materials and the wearing of buttons, badges or other insignia, except that:

a.   No means of amplification may be used, electronic or otherwise, which creates any noise or diversion that disturbs or tends to disturb the orderly conduct of the campus or classes taking place at the time.;

b.   No person using the Free Speech Area shall physically touch, strike or impede the progress of passersby, except for incidental or accidental contact, or initiation of such contact by a passerby;

c.   No person using the Free Speech Area shall solicit donations of money, through direct requests for funds, sales of tickets or otherwise, except where he/she is using the Free Speech Area on behalf of and collecting funds for an organization which is registered with the secretary of state as a nonprofit corporation, or is an approved Associated Student Organization or Club.

EC   76120

## 9902.13  Time Allotments for Speech.

The president of each college or his/her representative may set reasonable time restrictions on the use of Free Speech Areas, in order to ensure that all persons are given equal access to the use of the Free Speech Area.  The times at which the Free Speech Area may be used shall be subject to reasonable campus regulations.

## 9903.   STUDENT EXERCISE OF FREE SPEECH IN AREAS OUTSIDE OF DESIGNATED FREE SPEECH AREA.

The president of each college may designate areas outside of the Free Speech Areas where students, faculty and staff may exercise freedom of expression subject only to reasonable time, place and manner restrictions.

### 9903.10 Bulletin Boards.

Students shall be provided with bulletin boards for use in posting student materials at campus locations convenient for student use.  The location and number of such bulletin boards shall be determined by the college president or his/her representative.

Each college may have bulletin boards.  The use of the bulletin boards shall be open to use only by students or recognized student organizations and shall be based on a first-come, first-served basis.

Posting of materials on bulletin boards shall be subject to the limitations concerning the manner of exercising students' rights of free expression in Free Speech Areas pursuant to Section 9902.10.

All materials displayed shall clearly indicate the author or agency responsible for its production and shall be dated with the date of posting by the College president's designee.

The president of each college shall prescribe reasonable lengths of time during which such printed material may be posted on the bulletin boards with the object of assuring fair access to the bulletin boards for all students.

Historical Note:  Former Board Rule 91106.12, enacted 3-15-72, repealed 4-20-89.

### 9903.11 Posting Areas.

The president of each college, or his/her representative, may designate areas other than the bulletin boards for display of materials.

Historical Note:  Former Board Rule 91106.13, enacted 3-15-72, repealed 4-20-89.

## 9904.   STUDENT USE OF AREAS NOT DESIGNATED FOR FREE SPEECH ACTIVITIES.

Student use of classrooms, rooms, buildings, facilities and grounds not designated as Free Speech Areas or otherwise designated for student free speech exercises in accordance with this article shall be governed by the rules and regulations established pursuant to Article X, relating to student activities and events.

## 9905.   VISITOR USE OF AREAS NOT DESIGNATED FOR FREE SPEECH ACTIVITIES.

Visitor use of any areas, classrooms, rooms, buildings, facilities and grounds not designated as Free Speech Areas is subject to the Civic Center Permit rules set forth in Chapter VII, Article 2 of these Board Rules.

Amended: 12-07-16

KEVIN A. SHAW

*VS.*

*KATHLEEN BURKE; EARIC DIXON-PETERS; WILLIAM A. MARMOLEJO; JUAN C. ASTORGA; FRANCISCO C. RODRIGUEZ; SCOTT J. SVONKIN; SYDNEY K. KAMLAGER; MIKE FONG; MIKE ENG; ANDRA HOFFMAN; ERNEST H. MORENO; NANCY PEARLMAN*

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

# EXHIBIT B



*KEVIN  A. SHAW*

*VS.*

*KATHLEEN BURKE; EARIC DIXON-PETERS; WILLIAM A. MARMOLEJO; JUAN C. ASTORGA; FRANCISCO C. RODRIGUEZ; SCOTT J. SVONKIN; SYDNEY K. KAMLAGER; MIKE FONG; MIKE ENG; ANDRA HOFFMAN; ERNEST H. MORENO; NANCY PEARLMAN*

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

# EXHIBIT  C



**LOS ANGELES PIERCE COLLEGE**
**USE OF FREE SPEECH AREA**

Name of person(s) distributing materials: _Kevin Shaw_

Name of organization you represent: _Young Americans for Liberty_

Address of organization: __ REDACTED

City: _____    State: _____    Zip Code: _____

Telephone: (_____    Number of people to distribute material(s): _3_

Date and time of literature distribution _11/2/16_    _12:00_
                                         (Date)                    (Time)

*Note: This is valid only on the date(s) listed above*
*(Keep this form with you while on campus)*

**RULES FOR DISTRIBUTION OF MATERIAL**
**AND USE OF FREE SPEECH AREAS OFF-CAMPUS ENTITIES**

The college has one (1) Free Speech Area (FSA) on the campus where there is unlimited accessibility and a normal flow of student traffic for the distribution of free material and the obtaining of signatures.

Individuals planning to distribute material on campus are required to go to the Vice President of Student Services Office located on the third floor of the Student Services Building between the hours of 9:00 am and 4:00 pm to:

1. Report his/her presence on campus
2. Identify the organization and give the name(s) of the distributor(s) and address of the organization
3. Indicate how many people will be distributing along with the date(s) and time(s) of distribution
   *(The college may set reasonable time restrictions in order to ensure equal access to the use of the FSA)*

Exhibit C — Page 36

The following regulations are designed to permit all persons freedom of expression, yet prevent attempts to coerce or intimidate students:

1. **TIME**
   The distribution of material/obtaining of signatures shall be allowed from 9:00am until 7:30pm, Monday through Friday.

2. **PLACE**
   There is one (1) area designated for free speech and gathering of signatures. The FSA is located on the Mall within the red and black dotted lines. (see attached map)

3. **MANNER**
   No one shall coerce, force, or impede the progress of a passerby into taking the material or signing a paper. <u>No one shall distribute material which disrupts the orderly operation of the college or interferes with the educational process of the college. No one is allowed to drive a vehicle on the Mall.</u>

4. **9902.10** <u>RESPONSIBILITIES of PERSONS USING THE FREE SPEECH AREA</u>
   All persons using the Free Speech Area of a college are expected to monitor the content of their speech such that the expression (1) is not obscene, libelous, or slanderous according to current legal standards, (2) does not create a clear and present danger of the commission of unlawful acts on community college premises, (3) is not violative of lawful community college regulations, or (4) does not substantially disrupt the orderly operation of the college. Any person who is found to have expressed speech in violation of this section may be subject to the sanctions applicable respectively to students, staff, faculty, or visitors.

EC    76120

Adopted    04-20-89

The distributor will control the material and dispose of any discarded material to avoid litter problem. The use of sound amplification equipment is prohibited. No person using the FSA shall physically touch, strike, or impede the progress of passerby. No one shall solicit donations of money through direct requests for funds, sales of tickets, or otherwise, except on the behalf of collecting funds for an organization which is registered with the Secretary of State of California as a nonprofit corporation or an approved Associated Student Organization or Club.

*I have read and understand the rules contained on the form and will abide by them. I further understand that non-compliance of the rules in entirety may result in forfeit of present and/or future use of the FSA.*

11/2                     Kevin Shaw
_____                  _____            _____
(Date)                   (Print Name)                   (Signature)

**Exhibit C - Page 37**

IX - 30

9902.

9902.10    Responsibilities of Persons Using Free Speech Areas.
All persons using the Free Speech Area of a college are
expected to monitor the content of their speech such
that the expression (1) is not obscene, libelous or
slanderous according to current legal standards, (2)
does not create a clear and present danger of the
commission of unlawful acts on community college
premises, (3) is not violative of lawful community
college regulations, or (4) does not substantially disrupt
the orderly operation of the college. Any person who is
found to have expressed speech in violation of this
section may be subject to the sanctions applicable
respectively to students, staff, faculty or visitors.

EC    76120

Adopted    04-20-89

Historical Note: Former Board Rule 91107, enacted 3-15-72, repealed
4-20-89.

9902.11    Distribution of Materials. Persons using a Free Speech
Area shall be allowed to distribute petitions, circulars,
leaflets, newspapers, miscellaneous printed matter and
other materials, subject to the following restrictions:

a.    Such distribution shall take place only within
the geographical limits of the Free Speech Area;

b.    Any material being distributed which is
discarded or dropped in or around the Free
Speech Area other than in an appropriate
receptacle must be retrieved and removed or
properly discarded by those persons distributing
the material prior to their departure from the
Free Speech Area that day;

Adopted    04-20-89

Exhibit C - Page 38