1   ATKINSON, ANDELSON, LOYA, RUUD & ROMO
    A Professional Corporation
2   Warren S. Kinsler        State Bar No. 103265
        WKinsler@aalrr.com
3   Sharon J. Ormond         State Bar No. 195812
        SOrmond@aalrr.com
4   S. Brooke Romero         State Bar No. 312448
        BRomero@aalrr.com
5   12800 Center Court Drive South, Suite 300
    Cerritos, California 90703-9364
6   Telephone:  (562) 653-3200
    Fax:  (562) 653-3333
7
    Attorneys for Defendants Kathleen F. Burke, Earic Dixon-
8   Peters, William A. Marmolejo, Juan C. Astorga, Francisco C.
    Rodriguez, Scott J. Svonkin, Sydney K. Kamlager, Mike
9   Fong, Mike Eng, Andra Hoffman, Ernest H. Moreno, and
    Nancy Pearlman
10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13  KEVIN SHAW, an individual,          Case No.  2:17-cv-02386-ODW-PLA

14               Plaintiff,             Honorable Otis D. Wright, II

15  v.

16  KATHLEEN F. BURKE, *in her          **DEFENDANTS' NOTICE OF
    individual and official capacities*;  MOTION AND MOTION TO
17  EARIC DIXON-PETERS, *in his         DISMISS PLAINTIFF'S
    individual and official capacities*;  COMPLAINT [F.R.C.P. 12(B)(1)
18  WILLIAM A. MARMOLEJO, *in his       AND (B)(6)] OR IN THE
    individual and official capacities*;  ALTERNATIVE FOR A MORE
19  JUAN C. ASTORGA, *in his individual  DEFINITE STATEMENT [F.R.C.P.
    and official capacities*; FRANCISCO  12(E)]; AND MEMORANDUM OF
20  C. RODRIGUEZ, *in his official       POINTS AND AUTHORITIES**
    capacity*; SCOTT J. SVONKIN, *in his
21  official capacity*; SYDNEY K.       Date:      August 21, 2017
    KAMLAGER, *in his official capacity*;  Time:      1:30 p.m.
22  MIKE FONG, *in his official capacity*;  Dept.:     Courtroom 5D
    MIKE ENG, *in his official capacity*;
23  ANDRA HOFFMAN, *in her official     Complaint Filed:   March 28, 2017
    capacity*; ERNEST H. MORENO, *in     Current Response Due:  May 24, 2017
24  his official capacity*; NANCY
    PEARLMAN, *in her official capacity*;
25  and JOHN DOE, *in his individual and
    official capacities*,
26
                 Defendants.
27

28

- 1 -
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

PLEASE TAKE NOTICE that on August 21, 2017, at 1:30 p.m., or as soon thereafter as counsel may be heard in Courtroom 5D of the United States District Court, Central District, located at 312 North Spring Street, Los Angeles, California, Defendants, KATHLEEN F. BURKE ("Burke"), EARIC DIXON-PETERS ("Peters"), WILLIAM A. MARMOLEJO ("Marmolejo"), JUAN C. ASTORGA ("Astorga"), FRANCISCO C. RODRIGUEZ ("Rodriguez"), SCOTT J. SVONKIN ("Svonkin"), SYDNEY K. KAMLAGER ("Kamlager"), MIKE FONG ("Fong"), MIKE ENG ("Eng"), ANDRA HOFFMAN ("Hoffman"), ERNEST H. MORENO ("Moreno"), and NANCY PEARLMAN ("Pearlman") will move this court pursuant to Federal Rules of Civil Procedure, Rules 12(b)(1) and 12(b)(6), for an order dismissing Plaintiff's Complaint for Injunctive and Declaratory Relief and Damages, or in the alternative for a more definite statement pursuant to Federal Rules of Civil Procedure, Rules 12(e).  This motion is made on the following grounds:

1.     Eleventh Amendment immunity bars all claims for monetary damages against individual Defendants sued in their official capacities (Second, Third, Fourth and Fifth Causes of Action).

2.     The Court lacks subject matter jurisdiction over each of Plaintiff's claims for relief due to Plaintiff's lack of standing (All Causes of Action).

3.     Plaintiff fails to state any claims upon which relief can be granted (All Causes of Action).

4.     Plaintiff's Second, Third, Fourth, and Fifth Causes of Action fail to state a claim for individual liability against Defendants Burke, Marmolejo, Dixon-Peters, and Astorga (the Pierce College Defendants).

5.     Even if Plaintiff could state a claim for relief against the Pierce College Defendants, they are entitled to qualified immunity.

This motion is made following Defendants' attempt to meet and confer with Plaintiff's counsel pursuant to U.S. District Court Central District Local Rule 7-3.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

On May 17, 2017, Warren S. Kinsler and Sharon J. Ormond, counsel for Defendants, spoke by telephone with Arthur Willner, David Salazar, Marieke Tuthill Beck-Coon, and Brynne Madway, counsel for Plaintiff, about this motion to dismiss. The issues were not resolved, thus necessitating the need for the instant motion so as not to waive any defenses that Defendants' may have.

This motion will be made and based on this Notice of Motion, the Memorandum of Points and Authorities, the pleadings and records on file with this Court, any evidence of which the Court may take judicial notice prior to or at the hearing of this matter, and upon such oral or documentary evidence as may be presented at the hearing of this motion.

Dated:  May 24, 2017          ATKINSON, ANDELSON, LOYA, RUUD & ROMO


By:  /s/ Sharon J. Ormond
     Warren S. Kinsler
     Sharon J. Ormond
     S. Brooke Romero
     Attorneys for Defendants Kathleen F. Burke, Earic Dixon-Peters, William A. Marmolejo, Juan C. Astorga, Francisco C. Rodriguez, Scott J. Svonkin, Sydney K. Kamlager, Mike Fong, Mike Eng, Andra Hoffman, Ernest H. Moreno, and Nancy Pearlman

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

# **TABLE OF CONTENTS**

**Page**

I.   STATEMENT OF FACTS.................................................................1

    A.   District Board Rules 9901, et seq. ........................................1

    B.   Pierce College Free Speech Area Policy. ...............................2

II.   ARGUMENT ............................................................................3

    A.   Eleventh Amendment Immunity Bars All Claims for Monetary Damages Against Individual Defendants Sued in their Official Capacities. ............................................................................3

    B.   The Court Lacks Subject Matter Jurisdiction Over Each of Plaintiff's-Claims for Relief Due to Plaintiff's Lack of Standing. .......4

        1.   Plaintiff Lacks Standing to Challenge the District's Board Rules in His First Cause of Action. ............................6

        2.   Plaintiff Lacks Standing to Challenge Pierce College's Free Speech Practices in His Second, Third, Fourth, and Fifth Causes of Action. ..............................................7

    C.   Plaintiff Fails to State Any Claims Upon Which Relief Can Be Granted. ................................................................................11

        1.   Pleading Standards...............................................11

        2.   Because The Board Rules Are Constitutionally Sound, Plaintiff Fails to State Any Claim for Relief in His First Cause of Action. ..................................................11

    D.   Even if Plaintiff Could State a Claim for Relief Against the Pierce College Defendants, They Are Entitled to Qualified Immunity. ................................................................................22

        1.   The Qualified Immunity Doctrine Broadly Protects Public Officials Sued In Their Individual Capacities. ......23

        2.   Defendants Burke, Marmolejo, Dixon-Peters, and Astorga Are Entitled To Qualified Immunity. .......................24

III.   CONCLUSION ........................................................................25

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

# TABLE OF AUTHORITIES

**Pages**

<u>**FEDERAL CASES**</u>

*Adderley v. Florida*
 385 U.S. 39 (1966) ............................................................................. 12

*Anderson v. Creighton*
 483 U.S. 635 (1987) ........................................................................... 23

*Ashcroft v. al-Kidd*
 536 U.S. 731 (2011) ...................................................................... 23, 25

*Ashcroft v. Iqbal*
 556 U.S. 662 (2009) .................................................................... 3, 6, 11

*Beck v. City of Upland*,
 527 F.3d 853 (9th Cir. 2008) ............................................................ 22

*Bell Atlantic Corp. v. Twombly*
 550 U.S. 544 (2007) ........................................................................... 11

*Bl(a)ck Tea Soc'y v. City Of Boston*
 378 F.3d 8 (1st Cir. 2004) ................................................................. 15

*Bowman v. White*
 444 F.3d 967 (8th Cir. 2006) ......................................... 18, 19, 24, 25

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*
 149 F.3d 971 (9th Cir. 1998) ............................................................ 24

*Cerrato v. San Francisco Comm. College Dist.*
 26 F.3d 968 (9th Cir. 1994) ................................................................ 4

*City of Los Angeles v. Lyons*
 461 U.S. 95 (1983) .............................................................................. 5

*Clark v. Community for Creative Non-Violence*
 468 U.S. 288 (1984) ....................................................................passim

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*
 473 U.S. 788 (1985) ........................................................................... 12

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Pages**

*Davis v. City of Ellensburg*
    869 F.2d 1230 (9th Cir. 1989)........................................................................22

*Desyllas v. Bernstine*
    351 F.3d 934 (9th Cir. 2003)..........................................................................13

*FW/PBS, Inc. v. City of Dallas*
    493 U.S. 215 (1990) .........................................................................................5

*Get Outdoors II, LLC v. City of San Diego*
    506 F.3d 886 (9th Cir. 2007) ...........................................................................6

*Guengrich v. Barron*
    2011 WL 13116612 (C.D.Cal., May 5, 2011, No.
    210CV01045JHNPLAX) .................................................................................25

*Harlow v. Fitzgerald*
    457 U.S. 800 (1982) .......................................................................................23

*Heffron v. Int'l Society for Krishna Consciousness, Inc.*
    452 U.S. 640 (1981) ..................................................................................12, 15

*Holley v. Cal. Dep't of Corr.*
    599 F.3d 1108 (9th Cir. 2010) ..........................................................................3

*Kokkonen v. Guardian Life Insur. Co.*
    511 U.S. 375 (1994) .........................................................................................5

*Laird v. Tatum*
    408 U.S. 1 (1972) .............................................................................................5

*Lane v. Franks*
    134 S.Ct. 2369 (2014) ....................................................................................23

*Lopez v. Candaele*
    630 F.3d 775 (9th Cir. 2010).............................................................5, 6, 9, 10

*Lopez v. Smith*
    203 F.3d 1122 (9th Cir. 2000) ........................................................................11

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

- iii -

# TABLE OF AUTHORITIES
## (CONTINUED)

**Pages**

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992) .................................................................................. 5

*Malley v. Briggs*
   475 U.S. 335 (1986) ................................................................................ 23

*Mitchell v. Los Angeles Community College District*
   861 F.2d 198 (9th Cir. 1988) .................................................................... 4

*Pennhurst State School & Hosp. v. Halderman*
   465 U.S. 89 (1984) .................................................................................... 4

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*
   460 U.S. 37 (1983) .................................................................... 12, 13, 25

*Quern v. Jordan*
   440 U.S. 332 (1979) .................................................................................. 4

*Roberts v. Haragan*
   346 F.Supp.2d 853 (N.D.Tex.2004) ...................................................... 24

*Rock For Life-UMBC v. Hrabowski*
   411 Fed.Appx. 541, 2010 WL 5189456 (4th Cir. 2010) ....................... 6

*Souders v. Lucero*
   196 F.3d 1040 (9th Cir. 1999) .......................................................... 11, 13

*Steckman v. Hart Brewing, Inc.*
   143 F.3d 1293 (9th Cir. 1998) .................................................................. 3

*Students for Life USA v. Waldrop*
   2015 WL 854866 (S.D.Ala. 2015, No. CIV.A. 14-0157-WS-B) ........... 19, 20, 24

*Thomas v. Anchorage Equal Rights Comm'n*
   220 F.3d 1134 (9th Cir. 2000) .............................................................. 6, 10

*Thornhill Pub. Co. v. General Telephone Electronics*
   594 F.2d 730 (9th Cir. 1979) .................................................................... 5

*Vasquez v. Los Angeles Cty.*
   487 F.3d 1246 (9th Cir. 2007) .................................................................. 3

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

- iv -

# TABLE OF AUTHORITIES
## (CONTINUED)

**Pages**

*Ward v. Rock Against Racism*
491 U.S. 781 (1989) ........................................................................ 14

*White v. Pauly*
137 S.Ct. 548 (2017) ...................................................................... 23

*Widmar v. Vincent*
454 U.S. 263 (1981) ........................................................ 12, 13, 19, 25

*Wood v. Moss*
134 S.Ct. 2056 (2014) .................................................................... 23

*Ex Parte Young*
209 U.S. 123 (1908) .......................................................................... 4

**STATE CASES**

*Savage v. Trammel Crow Co.*
223 Cal.App.3d 1562 (1990) .......................................................... 15

**FEDERAL CODES/STATUES**

42 U.S.C. § 1983 ("Section 1983") ..........................................passim

490 U.S. 1081 (1989)........................................................................ 4

Federal Rules of Civil Procedure, Rules 12(b)(1) and (b)(6)................... 3

**STATE CODES/STATUTES**

Cal. Educ. Code, § 66010.4(a)(1)................................................. 13, 14

Cal. Educ. Code, § 70902(a)(2) .................................................... 7, 13

Cal. Educ. Code, § 82537 ............................................................... 16

**OTHER AUTHORITIES**

Rule 12(b)(1)..................................................................................... 4

Rule 9901 ................................................................................... 1, 13

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

- v -

# TABLE OF AUTHORITIES
## (CONTINUED)

**Pages**

Rules 9901, et seq. ........................................................................................ 1, 13

Rule 9902 ........................................................................................ 1, 2, 15, 17

Rule 9903 .......................................................................................................... 15

Rule 9903.10 ..................................................................................................... 16

Rule 9904 ...................................................................................................... 3, 18

Rule 9904, Ex. .............................................................................................. 2, 3

Rule 9905 .......................................................................................................... 16

Rule 91001 et seq. ....................................................................................... 3, 16

Rules 91005 ...................................................................................................... 16

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

- vi -

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  STATEMENT OF FACTS

The Los Angeles Community College District ("District"), an agency of the State of California, operates nine campuses, including Pierce College. Kevin Shaw ("Plaintiff"), a student at Pierce College, filed suit against each member of the District's Board of Trustees, four officials who work at Pierce College, and a "John Doe" (who is not a party to this motion) to challenge the constitutionality of the District's Board Rules at Chapter IX, Article IX, Freedom of Speech, and the procedures at Pierce College, on their face and as applied to Plaintiff.

### A.  District Board Rules 9901, et seq.

The District's Board of Trustees promulgates Board Rules for the governance of the District's colleges. Chapter IX, Article IX of the District Board Rules, referred to by the Plaintiff and herein as the "District Free Speech Policy" (Exhibit A to Plaintiff's Complaint ("Cp.")), provides direction and delegates authority to college presidents to designate "an area or areas on the college campus as areas for free discussion and expression by all persons." Board Rule 9902, Cp. ¶ 36 and Ex. A thereto. All other areas of campus which have not been designated as Free Speech Areas ("FSAs") are considered non-public forums. Board Rule 9901, Cp., ¶ 35 and Ex. A thereto. Plaintiff contends the Board's declaration of the vast majority of its college campuses to be non-public forums, and the designation of FSAs for expressive activity, violates his and other students' First and Fourteenth Amendment rights. Cp., ¶ 91.

The Board of Trustees has also promulgated Board Rules (91001 et seq.) which are specifically applicable to student and student group event and activities, of which we have requested that this Court take judicial notice. (See Request for Judicial Notice ("RJN"), filed concurrently herewith, Ex. 1.) These Board Rules provide additional avenues for students to engage in expressive activity, outside FSAs, and are expressly referenced in the District Free Speech Policy, though the

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

1    Plaintiff makes no mention of them. *See* Board Rule 9904, Ex. A to Cp.

2    **B.    Pierce College Free Speech Area Policy.**

3            Plaintiff next takes issue with the implementation of the District Free Speech

4    Area Policy at Pierce College. In accordance with Board Rule 9902 (Cp., ¶36 and

5    Ex. A thereto), Pierce College has a FSA located in an area of campus guaranteeing

6    "normal flow of traffic" and "unlimited accessibility" by students, staff, and

7    community members. *Id.*; Ex. B to Cp. Individuals desiring to use the FSA for

8    expressive activity are required to fill out a form, indicating their name, organization

9    affiliation, contact information, and the number of individuals who will be

10   distributing materials and when the activity will occur. Ex. C to Cp. Plaintiff refers

11   to the form as a "permit application" and to the rules printed on the form, which

12   govern use of the FSA and reiterate the Board Rules in this regard, as the "Pierce

13   College Free Speech Area Policy." Cp., 43.

14           Plaintiff's challenges to the Pierce College Free Speech Area Policy arise

15   from an incident that occurred on or about November 2, 2016. Specifically, Plaintiff

16   alleges he and two field representatives from an organization called "Young

17   Americans for Liberty" set up a folding table on the College campus, outside the

18   FSA, and began distributing Spanish-language versions of the United States

19   Constitution and engaging passersby in discussion regarding the group's political

20   views. Cp., ¶¶ 56-58. Plaintiff alleges that Defendant Doe approached the group and

21   informed Plaintiff his activity was unauthorized in that location and that Plaintiff

22   would need to accompany him to fill out a permit application for use of the FSA.

23   Cp., 60-62. Plaintiff alleges that Defendant Astorga subsequently informed him via

24   email that he would be required to complete a "free speech form" prior to using the

25   FSA in the future. Cp., 74. Despite alleging that Defendant Doe and Astorga's

26   actions served to "chill" his speech, Plaintiff goes on to allege that he engaged in

27   expressive activity outside the FSA for several hours on November 16, 2016, and

28   that he was undisturbed by the Defendants or any other District employee. Cp., ¶ 66.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

Defendants seek the dismissal of Plaintiff's Complaint for the various reasons set forth in the Notice of Motion and below.

## II. <u>ARGUMENT</u>

Federal Rules of Civil Procedure, Rules 12(b)(1) and (b)(6), permit dismissal of a complaint (or specific counts within a complaint) based on lack of subject matter jurisdiction or the failure to state a claim upon which relief can be granted. In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Most significantly, Plaintiff's Complaint is based on a false premise, i.e., that any of the Defendants were aware Plaintiff was a student. Plaintiff has not and cannot allege that any of the Defendants was aware he was a student on or before November 2, 2016, as opposed to a non-student whose speech rights would be different than those of a student. As Board Rule 9904 makes clear, the speech rights of students are governed by Chapter IX, Article X, commencing with rule 91001 et seq, as opposed to Article IX. *See*, Board Rule 9904, Ex. A to Cp.; Ex. 1 to RJN.

Any dismissal of this matter should be without leave to amend, since it is "<u>beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief</u>." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296, 1298 (9th Cir. 1998) (emphasis added).

**A.** <u>**Eleventh Amendment Immunity Bars All Claims for Monetary Damages Against Individual Defendants Sued in their Official Capacities.**</u>

Eleventh Amendment immunity bars actions by a private citizen against a state and its officials when sued in their official capacity "unless Congress has abrogated state sovereign immunity under its power to enforce the Fourteenth Amendment or [the] state has waived it." *Holley v. Cal. Dep't of Corr.*, 599 F.3d

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

1108, 1111 (9th Cir. 2010). Plaintiff's claims are asserted under 42 U.S.C. section 1983 ("Section 1983"), and the Supreme Court has specifically held that Section 1983 does <u>not</u> abrogate Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 342 (1979).

Rather, the Supreme Court determined that agencies of the state are immune under the Eleventh Amendment from suit—"regardless of the nature of the relief sought." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Further, in *Mitchell v. Los Angeles Community College District*, 861 F.2d 198, 201-202 (9th Cir. 1988), *cert. denied*, 490 U.S. 1081 (1989), the Ninth Circuit unequivocally held that California's community college districts are agencies of the State of California for purposes of sovereign immunity under the Eleventh Amendment.

The individual Defendants sued in their official capacities "share in the District's Eleventh Amendment immunity" to the extent claims for monetary damages are asserted against them. *Id*. at 201; *Cerrato v. San Francisco Comm. College Dist.*, 26 F.3d 968, 972-973 (9th Cir. 1994), citing *Ex Parte Young*, 209 U.S. 123 (1908). Plaintiff's Second, Third, Fourth and Fifth Causes of Action, challenging procedures at Pierce College on their face and as applied, seek monetary damages against Defendants Burke, Dixon-Peters, Marmolejo and Astorga (referred to herein as the "Pierce College Defendants") in their individual and official capacities. To the extent these Defendants have been sued in their <u>official</u> capacity, they share in the District's immunity from suit.

To the extent these Defendants have been sued in their <u>individual</u> capacities, Plaintiff cannot state a claim for damages and the Defendants are entitled to qualified immunity, as discussed further in Sections C and D, below.

**B.** **The Court Lacks Subject Matter Jurisdiction Over Each of Plaintiff's Claims for Relief Due to Plaintiff's Lack of Standing.**

Lack of standing provides a basis for granting a Rule 12(b)(1) motion to

- 4 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

dismiss. The Plaintiff has the burden to establish that subject matter jurisdiction is proper. *Kokkonen v. Guardian Life Insur. Co.,* 511 U.S. 375, 377 (1994); *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010). This burden must be met by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over the action. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). When a defendant facially challenges jurisdiction, all material allegations in the complaint are assumed to be true and the question for the court is whether the lack of jurisdiction appears on the face of the pleading. *Thornhill Pub. Co. v. General Telephone Electronics,* 594 F.2d 730, 733 (9th Cir. 1979). However, the <u>plaintiff</u> retains the burden of establishing federal subject matter jurisdiction. In effect, the court presumes <u>lack</u> of jurisdiction unless and until the plaintiff proves otherwise. *Kokkonen,* 511 U.S. at 376-378.

To establish the "irreducible constitutional minimum of standing," the plaintiff must show: (1) "injury in fact," i.e., that he suffered or is in immediate danger of suffering an injury that is <u>concrete and particularized</u> and <u>not conjectural or hypothetical</u>; (2) a causal connection between the injury and the challenged conduct; and that (3) it is "likely," rather than merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (citations omitted); *Lopez*, 630 F.3d at 785. "Abstract injury is not enough." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).

Moreover, and contrary to Plaintiff's assertions, "[m]ere '[a]llegations of a subjective "chill" are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm,'" and a plaintiff's bare claims of "self-censorship alone" will not suffice. *Lopez*, 630 F.3d at 787, 792, quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972).

Courts have recognized that "[c]onstitutional challenges based on the First Amendment present unique standing considerations," and therefore "plaintiffs may establish an injury in fact without first suffering a direct injury from the challenged

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

restriction." *Lopez*, 630 F.3d 775, 785 (citation omitted). However, plaintiffs bringing "pre-enforcement" actions must still demonstrate "a realistic danger of sustaining a direct injury as a result of the [policy's] operation or enforcement.'" *Id*. at 785 (citation omitted).

The Ninth Circuit Court of Appeals directs assessment of the following factors to determine whether the plaintiff has sufficiently alleged a credible threat of adverse governmental action: (1) whether the plaintiff has shown a "reasonable likelihood" the government will enforce the challenged law against him; (2) whether the plaintiff has established, "with some degree of concrete detail," that he intends to violate the challenged law; and (3) whether the challenged law is applicable to the plaintiff, "either by its terms or as interpreted by the government." *Id*. at 786. With respect to the second factor, the plaintiff must "articulate a concrete plan to violate the law in question by giving details about [his] future speech such as 'when, to whom, where, or under what circumstances.'" *Id*. at 787, quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000).

The threat of enforcement must be shown "with respect to each of the provisions [Plaintiff] seeks to challenge, as standing regarding one aspect of a policy cannot be bootstrapped into standing as to the rest." *Rock For Life-UMBC v. Hrabowski*, 411 Fed.Appx. 541, 547, 2010 WL 5189456 (4th Cir. 2010) (citation omitted). Even where a statute is challenged on its face, the plaintiff still must demonstrate an "injury in fact," to establish standing to bring the claim. *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 891-892 (9th Cir. 2007).

1.   **Plaintiff Lacks Standing to Challenge the District's Board Rules in His First Cause of Action.**

Plaintiff alleges in his First Cause of Action that the District Free Speech Policy is unconstitutional both on its face and as applied to him. However, this claim consists solely of legal conclusions that are unsupported by facts and that need not be accepted as true for purposes of a motion to dismiss. *Iqbal*, 556 U.S. at 678.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

Plaintiff alleges "[t]he denial of constitutional rights is an irreparable injury *per se*…." Cp., ¶ 97. However, Plaintiff does not and cannot allege how he was injured as a direct result of the District Free Speech Policy and the conduct of the Defendant Members of the Board of Trustees (the only defendants named as to the First Cause of Action). Rather, he makes the conclusory statement that the Defendants' "decision to maintain and enforce the District Free Speech Policy directly resulted in the deprivation of Shaw's and other students' constitutional rights under the First and Fourteenth Amendments to the Constitution." Cp., ¶ 95. Plaintiff states no facts and offers no explanation as to how his or other students' rights have been violated or are immediately threatened by specific provisions of the District Free Speech Policy and actions of the members of the Board of Trustees.

Further, as set forth below, Plaintiff is unable to even allege that *application* of the District Free Speech Policy by the remaining Pierce College Defendants caused an injury in fact sufficient to confer standing on his additional claims.

Plaintiff has failed to meet his burden to establish standing with respect to both the facial and as applied challenges, as the Complaint is devoid of facts indicating that he suffered or is in immediate danger of suffering a "concrete and particularized" injury directly caused by the District Free Speech Policy. As such, the Court lacks subject matter jurisdiction over Plaintiff's First Cause of Action.

## 2.   <u>Plaintiff Lacks Standing to Challenge Pierce College's Free Speech Practices in His Second, Third, Fourth, and Fifth Causes of Action.</u>

Plaintiff's Second, Third, Fourth, and Fifth Causes of Action allege the Pierce College Free Speech Area Policy is unconstitutional, both facially and as applied, and that the Policy constitutes an unconstitutional prior restraint both on its face and as applied. However, Plaintiff again makes conclusory statements without specific facts that plead an injury in fact sufficient to confer federal standing.

No college employee has the authority to establish policy as a matter of law; that is uniquely the role of the Governing Board as an agency of the State. Cal.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

Educ. Code, § 70902(a)(2) ["The governing board of each community college district shall establish rules and regulations not inconsistent with the regulations of the board of governors and the laws of this state for the government and operation of one or more community colleges in the district."]

Plaintiff asserts the Pierce College Defendants have "policymaking, administrative, and enforcement authority over Pierce College's policies and practices governing student speech and expressive activity." Cp., ¶¶ 122; 129; *see also* Cp. ¶¶ 101-103, 112-114. For purposes of establishing standing, Plaintiff is required to show a causal connection between the Defendants' involvement in the development and/or implementation of the Pierce College Free Speech Area Policy and an injury or credible threat of injury to his First Amendment rights. Instead, Plaintiff makes generalized statements that the "legal consequence" of Defendants' conduct is that his and other similarly situated students' First and Fourteenth Amendment rights have been violated, resulting in an "irreparable injury *per se*." Cp., ¶¶ 104, 115, 124, 131.

Plaintiff's Fourth and Fifth Causes of Action come slightly closer, but still fall short of pleading sufficient facts to confer standing. In those causes of action, Plaintiff alleges only the legal conclusion that Defendant Astorga "chilled Shaw's right to free expression and deprived Shaw of his clearly established rights to freedom of speech and expression secured by the First and Fourteenth Amendments." Cp., ¶¶ 121, 128.

Plaintiff alleges that after filling out a permit application, he gave notice to Defendant Astorga via email, on November 11, 2016, that he "intended to gather signatures outside of the Free Speech Area for the purpose of encouraging Pierce College to adopt a free speech policy statement produced by the Committee on Freedom of Expression at the University of Chicago." Cp., ¶ 64. Plaintiff has not and cannot allege that he was advised or otherwise prevented by Defendant Astorga or any of the other Defendants from engaging in this expressive activity outside of

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

- 8 -

the Free Speech Area. Indeed, Plaintiff has not and cannot allege that Astorga made any response to Plaintiff's statement of intent, much less responded with any sort of threat of arrest, student discipline, or removal from the campus.

Plaintiff further alleges he "attempted" to distribute materials outside the Free Speech Area on November 16, 2016. Cp., ¶ 66. While Shaw initially characterizes this as an "attempt," Plaintiff goes on to admit he did in fact distribute materials "for several hours in an open, grassy area of campus outside of the Free Speech Area," and he was not prevented or threatened with enforcement of the Pierce College Free Speech Area Policy by any employee. Cp., ¶ 66. Plaintiff also alleges that, while he was distributing materials on that day, he "observed a large protest that formed outside of the Free Speech Area to protest the election of then-President-Elect Donald Trump." *Ibid*. However, he similarly makes no allegation that the protestors were prevented from engaging in their expressive activity outside the FSA or were threatened with enforcement of the Pierce College Free Speech Area Policy.

Thus, Plaintiff has not and cannot allege he was threatened with enforcement of the Policy he asserts is unconstitutional both facially and as applied. Plaintiff's allegations that Defendant Doe prevented him from engaging in expressive activity outside the FSA are severely undercut by his subsequent allegations that he notified Defendant Astorga on November 11 of his intent to gather signatures outside the FSA, and he proceeded on November 16, 2016, to distribute materials outside the FSA without intervention. Plaintiff has not and cannot allege he was subjected to adverse treatment by any College employee, much less threatened with arrest, student discipline, or removal from campus based on his expressive activity. Moreover, Plaintiff does not allege any history of "past enforcement [of the Pierce College Free Speech Area Policy] against parties similarly situated," which the Ninth Circuit has opined is one way in which a plaintiff may plead a credible threat of enforcement. *Lopez*, 630 F.3d at 786-787. By alleging a protest took place outside the FSA undisturbed on November 16, 2016, Plaintiff alleges the exact opposite.

- 9 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

Accordingly, Plaintiff's subjective statements that he is "fearful of punishment" because he may be "charge[d] with a violation under the Standards of Student Conduct," or removed from the Pierce College campus by the "sheriff's office," are contradicted by the facts alleged and constitute mere speculation. Cp., ¶ 88. Plaintiff's claim that he "experienced emotional injury as a consequence of being denied his First Amendment rights," and his repeated references to a "chilling effect" on his and other students' rights as a result of the Defendants' actions are similarly unsupported and, "[m]ere '[a]llegations of a subjective "chill" are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'" Cp., ¶¶ 87, 118, 121, 128, *Lopez*, 630 F.3d at 787, 792 (citation omitted). Moreover, by his own allegations, Plaintiff pursued further speech activities on November 16, 2016, without any asserted interference or objection, which contradicts the "chill" he claims to have suffered.

With respect to whether there has been a credible threat of enforcement, Plaintiff states that he "wishes to engage in expressive activity on campus, including petitioning for signatures and distribution of literature," and that he wishes to do this without seeking prior permission or being limited to the Free Speech Area. Cp., ¶ 88. However, this allegation fails to "articulate a concrete plan to violate the [policy] in question by giving details about [the] future speech such as 'when, to whom, where, or under what circumstances.'" *Lopez*, 630 F.3d at 787, quoting *Thomas*, 220 F.3d at 1139. Plaintiff's vaguely stated desire to engage in expressive activity on the Pierce College campus is not adequate for the Court to make a determination as to whether he will be subject to a credible threat of enforcement in the near future.

For the foregoing reasons, Plaintiff has failed to plead facts to support his standing to challenge the Pierce College Free Speech Area Policy either on its face or as applied, including as a prior restraint on speech. Thus, Plaintiff's Second through Fifth Causes of Action must be dismissed based on the Court's lack of

- 10 -

1    jurisdiction.

2    **C.    Plaintiff Fails to State Any Claims Upon Which Relief Can Be Granted.**

3        **1.    Pleading Standards**

4        A complaint may survive a motion to dismiss only if it "contain[s] sufficient

5    factual matter, accepted as true, to 'state a claim of relief that is plausible on its

6    face.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court is not

7    "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*,

8    556 U.S. at 678 (citation omitted). In other words, the rule that a court must accept

9    as true all of the allegations in a complaint does not apply to legal conclusions. *Ibid*.

10   Leave to amend should be denied when it is clear the deficiencies of the complaint

11   cannot be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.

12   2000).

13       Since each of Plaintiff's claims is asserted under Section 1983, he is required

14   to establish (1) the Defendants acted under color of state law; and (2) the Defendants

15   deprived the Plaintiff of a right secured by the Constitution or a federal law. *Souders*

16   *v. Lucero*, 196 F.3d 1040, 1043 (9th Cir. 1999). As set forth below, Plaintiff fails to

17   allege sufficient facts to state a claim under Section 1983, and therefore all Causes

18   of Action must be dismissed.

19       **2.    Because The Board Rules Are Constitutionally Sound, Plaintiff**

20       **Fails to State Any Claim for Relief in His First Cause of Action.**

21       Plaintiff alleges in his First Cause of Action that the District Free Speech

22   Policy is unconstitutional on its face and as applied to his exercise of free speech.

23   However, Plaintiff has not and cannot truthfully plead facts showing he was

24   plausibly deprived of the Constitutional right to free speech.

25       Plaintiff's first objection to the District's Board Rules is that they "explicitly

26   designate the vast majority of Pierce College's campus a non-public forum," which,

27   according to Plaintiff, is not legally permitted. Cp., ¶¶ 92, 91. Established case law,

28   however, is to the contrary. The "First Amendment does not guarantee access to

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

property simply because it is owned or controlled by the government." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 803 (1985). Government, like any property owner, "has power to preserve the property under its control for the use to which it is lawfully dedicated." *Id.* at 800 (citation omitted); *Adderley v. Florida*, 385 U.S. 39, 47-48 (1966) [First Amendment guarantees have never meant "that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please."]; *Heffron v. Int'l Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981).

### a. Forum Analysis Determines the Extent of Government Control Over Its Property.

Courts apply a forum analysis to determine when the government's interest in limiting the use of its property to its intended purpose outweighs the interests of those wanting to use it for other purposes. Government property is divided into three categories: the traditional public forum, the designated public forum, and all remaining property, referred to as the nonpublic forum. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45-46 (1983); *Cornelius*, 473 U.S. at 799-800.

A traditional public forum is "a place that by long tradition has been used by the public at large for the free exchange of ideas," such as public sidewalks and parks. *Perry*, 460 U.S. at 45. Government creates a designated public forum when it intentionally opens a nontraditional forum for use by the public at large for assembly and speech. *Id.* at 45-46. In these two types of forums, content-based restrictions are permitted if necessary to serve a compelling state interest and narrowly drawn to achieve that end. *Id.* at 45. Restrictions on the time, place, and manner of speech are permitted and reasonable if they are content-neutral, narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels for communication of the speaker's intended message. *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 293 (1984); *Widmar v. Vincent*, 454 U.S. 263, 269-70 (1981).

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

- 12 -

All remaining public property, that is, all property not characterized as a traditional public forum or as a designated public forum, is considered nonpublic fora. *Perry*, 460 U.S. at 46. However, government may intentionally open a nonpublic forum to certain groups or certain topics, thus creating a "limited public forum." *DiLoreto*, 196 F.3d at 965. Government may set time, place, and manner regulations for use of nonpublic forums, or even reserve a forum for specific purposes (such as student use or student speech), as long as such action is "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry*, 460 U.S. at 46.

The Supreme Court, viewing a university's mission to be education, has rejected the proposition that a campus must grant unfettered access to all of its grounds or buildings, including to its own students. *Widmar*, 454 U.S. at 268 n. 5. For example, the Ninth Circuit Court of Appeals held, in *Desyllas v. Bernstine*, 351 F.3d 934, 943 (9th Cir. 2003), that campus areas not approved for handbill-posting are nonpublic fora. See also, *Souders v. Lucero*, 196 F.3d at 1044 [holding the outdoor space of a state university was not a public forum].

In this case, the "primary mission" of the California community colleges is to provide academic and vocational education to younger and older students. *See* Cal. Educ. Code, § 66010.4(a)(1). Consistent with this mission, and as authorized by California Education Code section 70902(a)(2), the District's Board of Trustees enacted Board Rules 9901 et seq., declaring its campuses to be non-public forums, except for those portions of each designated as a FSA, which is a limited public forum. Cp., ¶ 35 and Ex. A thereto.

**b.** **The District's Free Speech Policy Constitutes a Reasonable Time, Place and Manner Restriction.**

A regulation is content neutral where it is "justified without reference to the content of the regulated speech." *Clark*, 468 U.S. at 293-294. So as to preserve the campus to support the College's educational mission, Board Rule 9901 designates

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

all areas of campus not designated as FSAs as non-public forums, but it does so without regard for content or viewpoint.

### i) The District Free Speech Policy Is Narrowly Tailored to Serve a Significant Government Interest.

Substantial governmental interests exist in regulating competing uses of a college campus, including, but not limited to, avoiding disruption, insuring safety, comfort, or convenience of the public, and maintaining grounds that are attractive and intact. See *Ward v. Rock Against Racism*, 491 U.S. 781, 792 (1989); *Bloedorn*, 631 F.3d 1218, 1238-1239 (11th Cir. 2011); *Long Beach Area Police Network*, 574 F.3d 1011, 1024 (9th Cir. 2009). As a matter of law, the District has a substantial interest in ensuring that its campuses are available and used for their intended purpose—the academic and vocational education of its students. *See* Cal. Educ. Code, § 66010.4(a)(1). The designation of one specific area in which virtually unlimited speech activities may occur at the college is narrowly tailored to these interests, as the area is specifically chosen to be where "there is a normal flow of student traffic with unlimited accessibility." Cp., ¶ 36 and Ex. A thereto.

Moreover, the District's use of FSAs does not restrict speech any more than necessary to achieve the substantial interests articulated above. *Ward*, 491 U.S. at 799. To the contrary, the FSA facilitates speech, regardless of content, in an area at the heart of the campus heavily trafficked by students, staff and others. Cp., ¶ 36 and Ex. A thereto. Without the designation of FSAs, individuals would be able to congregate on walkways outside of doors and buildings, compete for use of college grounds, create safety and sanitation issues, and impose even greater administrative burdens in handling student and speaker safety, maintenance and cleanliness of grounds. *Bloedorn*, 631 F.3d at 1238-1239.

### ii) The Board Rules Leave Open Ample Alternative Channels of Communication.

Where "an advocate is given a realistic opportunity to reach his intended

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

1   audience, the alternative channels of communication are adequate." *Savage v.*
2   *Trammel Crow Co.*, 223 Cal.App.3d 1562, 1575-1576 (1990); *Heffron*, 452 U.S. at
3   654-655; *Bl(a)ck Tea Soc'y v. City Of Boston*, 378 F.3d 8, 14 (1st Cir. 2004)
4   ["[A]lthough the opportunity to interact directly with the [intended audience] by,
5   say, moving among them and distributing literature, would doubtless have facilitated
6   the demonstrators' ability to reach their intended audience, there is no constitutional
7   requirement that demonstrators be granted that sort of particularized access."]

8       Here, FSAs are specifically set aside for use by students and community
9   members who wish to engage in speech activities on campus in an area that affords
10  the greatest exposure, as Board Rule 9902 mandates that it be located only "where
11  there is a normal flow of student traffic with unlimited accessibility." Cp., ¶ 36 and
12  Ex. A thereto. Plaintiff has not alleged otherwise. Accordingly, the location of the
13  FSA provides speakers with extensive access to their intended audience. Just
14  because students may also walk through other areas of campus does not mean an
15  FSA provides inadequate access to students.

16      Although Plaintiff complains the FSA at Pierce College is only .003% percent
17  of the College's 426 acres (Cp., ¶ 3), Plaintiff's comparison to the size of the
18  complete campus property (taken as true for purposes of this motion) does not take
19  into account the acres upon acres of space allocated to the numerous buildings
20  affixed on the property, parking lots, and athletic fields, as well as what Plaintiff
21  acknowledges as 226 acres of open agricultural land. Cp., ¶ 46 and Ex. B thereto.
22  The standard is whether the channel of communication provided the speaker with a
23  "realistic opportunity" to reach his intended audience—not whether the size of the
24  forum meets a particular spatial requirement. *Clark*, 468 U.S. at 295. The District's
25  Free Speech Policy meets this standard as a matter of law.

26      Additionally, individuals retain other avenues of communication apart from
27  the FSAs. For example, the public sidewalks surrounding the campus are available
28  for speech activities by students and non-students alike, and Board Rule 9903

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

permits college presidents to designate areas outside of the FSAs "where students, faculty and staff may exercise freedom of expression subject only to reasonable time, place, and manner restrictions." Cp., ¶ 39 and Ex. A thereto. Individuals can also seek permission to use the facilities under the District's Civic Center Permit rules, as specified in Board Rule 9905. Ex. A to Cp.; Cal. Educ. Code, § 82537.

Moreover, District students, including Plaintiff, enjoy additional avenues to engage in expressive activity not available to other members of the public. Pursuant to Board Rule 9903.10, bulletin boards must be provided for use by students and student organizations. Ex. A to Cp. Further, Chapter IX, Article X of the Board Rules, which is not mentioned by Plaintiff but is explicitly referenced in the District Free Speech Policy, (a) allows for events and activities to be held on campus by students and student groups in areas outside the FSAs, and (b) specifically directs "the college president shall not approve any rules relating to non-Free Speech Areas which would deny students their free speech rights were they conducting such activities in Free Speech Areas." Board Rules 91005, 91001 et seq. (Ex. 1 to RJN); *Clark*, 468 U.S. at 295; *Bloedorn*, 631 F.3d at 1241-1242.

Plaintiff cannot plausibly plead that the Board Rules are anything other than content- and viewpoint-neutral, narrowly tailored to serve a significant government interest, and leave open alternative channels of communication of information. Accordingly, Plaintiff is unable to state a claim for relief under his First Cause of Action for alleged unconstitutionality of the District Free Speech Policy.

### c. Plaintiff Fails to State a Claim for Relief Under Section 1983 in his Second, Third, Fourth, and Fifth Causes of Action.

Plaintiff's Second and Fourth Causes of Action allege the Pierce College Free Speech Area Policy is unconstitutional on its face and as applied. Plaintiff's Third and Fifth Causes of Action allege the Policy constitutes an unlawful prior restraint on free speech, on its face and as applied. Plaintiff brings these claims against four

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

- 16 -

Pierce College Defendants. However, as explained below, Plaintiff does not and cannot allege factual allegations sufficient to establish liability under Section 1983.

### i)   *Plaintiff Fails to Allege Particular Acts or Omissions by Defendants Burke, Marmolejo, and Dixon-Peters Sufficient to Establish Liability.*

Plaintiff's claims against Defendant Burke are specifically based upon his allegation that Burke, as the College President, "is responsible for the designation of the [FSA] under District Free Speech Policy Rule 9902." Cp., ¶¶ 101, 112. With respect to Defendants Marmolejo and Dixon-Peters, Plaintiff alleges "[t]he Pierce College Free Speech Area Policy instructs permit applicants to file applications with the Vice President of Student Services Offices over which Defendants Dixon-Peters and Marmolejo have administrative authority." Cp., ¶¶ 102, 113. However, Plaintiff's Complaint is devoid of any factual allegations concerning acts or omissions of these Defendants, and he instead attempts to base liability solely on their positions at the College.

Plaintiff alleges that "by designating only a tiny area of campus for speech and distribution of literature, requiring a permit for its use, and failing to provide generally available notice to students regarding such restrictions or any publicly discernable standards guiding those tasked with enforcing them, Defendants should reasonably have known that their actions and inactions would lead to the deprivation of clearly established student rights to freedom of speech and expression secured by the First and Fourteenth Amendments in the manner experienced by Shaw." Cp., ¶¶ 122, 129. Taking such allegations as true, Plaintiff's claims are without merit because the designation of the FSA and permit requirements are not unlawful based on clearly established law.

Plaintiff is factually incorrect in his statement that "only a tiny area of campus [is open for] speech and distribution of literature." Cp., ¶¶ 122, 129. The Court may take judicial notice of the fact that the FSA is <u>not</u> the only space on the Pierce

- 17 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

College campus open for student speech and distribution. As discussed above, separate Board Rules apply to students, which allow them to conduct activities and events in areas outside the FSAs. *See* Board Rules 9904 (Ex. A to Cp.), and 91001, et seq. (Ex. 1 to RJN). Board Rule 9904 explicitly provides that "student use of classrooms, rooms, buildings, facilities and <u>grounds not designated as Free Speech Areas</u> or otherwise designated for student free speech exercises in accordance with this article shall be governed by the rules and regulations established pursuant to Article X, relating to student activities and events." Ex. A to Cp. (emphasis added). Moreover, as discussed in Section 2a, above, the creation of a FSA is not unconstitutional, because the entire Pierce College campus is a nonpublic forum.

Plaintiff's allegation that requiring individuals to obtain a permit prior to utilizing the FSA is also conclusory and factually inaccurate. Because permit requirements have consistently been upheld by courts under a variety of circumstances, it cannot be "clearly established" that such action or inaction by the Defendants would violate the rights of Plaintiff or any other Pierce College student. *Bloedorn*, 631 F.3d at 1236-1237; *Bowman v. White*, 444 F.3d 967, 980-981 (8th Cir. 2006).

In *Bloedorn*, the Eleventh Circuit upheld a university's requirement that outside, non-sponsored speakers apply for a permit to speak in the university's designated FSA, because the permit process did not give university officials "unbridled discretion" or "discriminate in any way based on who the speaker may be or on the nature of the topic the speaker wishes to address." *Bloedorn*, 631 F.3d at 1236. In *Bloedorn*, as in the present case, university officials had no discretion to assign the date and time to speakers, as it was the university's undisputed practice to issue the permit for the date and time requested, so long as the space had not already been reserved by another speaker or group. *Ibid*.

Likewise, in *Bowman*, the Eighth Circuit upheld a requirement that non-university speakers make a reservation to use an area of the university campus for

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

expressive activity by applying in advance for a permit. The court acknowledged the permit requirement was a "prior restraint on speech" which created a "heavy presumption of unconstitutionality." *Bowman*, 444 F.3d. at 980. However, the court found the university's policy did not "delegate overly broad discretion to its officials, nor [did] it allow the denial or revocation of permits on the basis of content." *Ibid*. The court further found the university had "a significant public safety interest in requiring a permit because of the time and resources necessary to accommodate the crowds [the plaintiff speaker would attract]," and the permit requirements were "narrowly tailored to meet these significant interests." *Id*. at 981.

As in *Bloedorn* and *Bowman*, the Pierce College administrators who process forms for use of the FSA *do not have any discretion* to deny a permit, other than on grounds that the FSA has already been reserved by another speaker or group at the time requested. Plaintiff alleges the Pierce College Free Speech Area Policy fails to provide the requisite "guideposts that check the licensor and allow courts quickly and easily to determine whether the licensor is discriminating against disfavored speech," and that it "[fails to provide] any publicly discernable standards guiding those tasked with enforcing [the Policy]." Cp. at ¶¶ 111, 122, 129. However, Plaintiff does not and cannot allege there is any discretion vested in the Pierce College administrators to deny an application for use of the FSA, nor that Plaintiff is aware of any instance in which an application was denied.

While Plaintiff may argue these cases are inapposite because they dealt with non-student speakers, there is no clearly established law holding students must be afforded more freedom of expression than other individuals who seek to use a college campus for expressive activity. See *Students for Life USA v. Waldrop*, 2015 WL 854866, *6 (S.D.Ala. 2015, No. CIV.A. 14-0157-WS-B), citing *Widmar* [rejecting plaintiff's argument that a student seeking access to a designated public forum on a university campus must be treated differently than any other citizen, because, by definition, a designated public forum is one that has been opened "for

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

use by the public at large."] Moreover, as discussed above, students enjoy additional avenues for engaging in expressive speech on the Pierce College campus which do not require obtaining a permit. Additionally, Plaintiff has not and cannot allege which Defendants, if any, was aware he was a student, as opposed to a non-student whose speech rights would be more limited than a student.

Plaintiff further claims that "[b]y requiring that individuals [to] provide their name, affiliation, and contact information, the Pierce College Free Speech Area Policy prohibits individuals from engaging in anonymous speech." Cp., ¶ 109. However, Plaintiff misunderstands the effect of the FSA use form and fails to consider the College's significant interest in knowing the identity of individuals and groups who utilize the campus to engage in expressive activity. Disclosing one's name and organization affiliation on the form does not divulge such information to the entire campus community, or the community at-large. The speaker or group remains anonymous to those who happen upon the FSA, unless the speaker or group otherwise discloses their identity in the course of their speech. *Bloedorn*, 631 F.3d at 1239 ["[T]he GSU restriction requires only that Bloedorn identify himself to the university officials who process his permit application; there is no requirement that he provide his name or contact information to anyone else. In that sense, he may remain an anonymous speaker."].

Plaintiff does not and cannot truthfully allege the College shares the information contained on the FSA use form with anyone other than the administrators or employees who access the forms as part of their job duties. The College, moreover, has a significant interest in maintaining the safety and security of its campus by determining the identity of those who come onto its property for the purpose of communicating information to students, employees, and other members of the public who may be present on the grounds. *Id*. at 1239-1240. None of the foregoing would be different for students seeking to use the FSA. *Id*. at 1240 ["Notably, the University requires its own students and other community members

- 20 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

1  to disclose the very same information any time they seek to reserve a campus area

2  for a speech activity."]

3      Plaintiff fails to state a claim against Defendants Burke, Marmolejo, and

4  Dixon-Peters because the Complaint is devoid of factual allegations which would

5  establish personal liability. Even taking Plaintiff's conclusory allegations as true,

6  Plaintiff does not and cannot allege facts sufficient to show his or any other Pierce

7  College student's "clearly established rights" were violated as a result of the Pierce

8  College Free Speech Area Policy or its application.

9            *ii)*     ***Plaintiff Fails to State a Claim for Relief Against***

10                  ***Defendant Astorga.***

11      Unlike his claims against Defendants Burke, Marmolejo, and Dixon-Peters,

12  Plaintiff attempts to allege facts concerning the particular actions of Defendant

13  Astorga. Taking Plaintiff's allegations as true, Defendant Astorga did not violate

14  any "clearly established" right of Plaintiff or any other Pierce College student.

15      More specifically, Plaintiff alleges that Defendant Astorga deprived him of

16  his "clearly established rights to freedom of speech and expression" by emailing

17  Plaintiff on November 22, 2016, stating, "All individuals that come onto campus to

18  use the free speech area are asked to fill out a free speech use form. Once that is

19  done a copy of the policy and a permit is handed to each person that comes into our

20  office. Please come see me next time you would like to distribute any materials and

21  I would be more than happy to provide you with the paperwork for you [*sic*]." Cp.,

22  ¶¶ 121, 119.

23      Plaintiff's allegations are simply inadequate to state a claim against

24  Defendant Astorga because, as discussed above, the designation of an FSA for

25  purposes of engaging in expressive activity and the accompanying permit

26  requirement are constitutional. Additionally, Plaintiff, as a Pierce College student,

27  would have been entitled, under the Board Rules applicable to student and student

28  groups, to engage in expressive activity outside the FSA (which plaintiff fails to

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

1   plead). Accordingly, this isolated statement by Defendant Astorga, without more,

2   does not suffice to establish a violation under Section 1983. *Davis v. City of*

3   *Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989), *overruled on other grounds*, *Beck*

4   *v. City of Upland*, 527 F.3d 853 (9th Cir. 2008) ["A plaintiff cannot prove the

5   existence of a [] policy or custom based solely on the occurrence of a single incident

6   of unconstitutional action by a non-policymaking employee."]

7       Plaintiff does not and cannot allege that Defendant Astorga was involved in

8   the development of the Pierce College Free Speech Area Policy, or that there is a

9   practice by this Defendant, or any other District employee or official, to restrict

10  student speech to the FSA subject to the permit requirements. In fact, Plaintiff

11  alleges facts demonstrating just the opposite. As noted, he alleges that, on or about

12  November 16, 2016, he distributed materials outside the FSA "for several hours,"

13  and at the same time observed a protest which formed outside the FSA—neither of

14  which were disturbed by Defendants or any other District employee. Cp., ¶ 66.[1]

15      Accordingly, given the absence of factual allegations which would establish

16  the violation of a "clearly established" right of Plaintiff or any other student by the

17  Pierce College Defendants, Plaintiff's claims for relief under his Second, Third,

18  Fourth, and Fifth Causes of Action must be dismissed.

19  **D.   Even if Plaintiff Could State a Claim for Relief Against the Pierce**

20  **College Defendants, They Are Entitled to Qualified Immunity.**

21      Unlike the Members of the Board of Trustees, who are only sued in their

22  official capacities, Plaintiff also sues the Pierce College Defendants in their

23  individual capacities. However, each of the Defendants is entitled to qualified

24  immunity from damages, as they did not violate Plaintiff's or any other student's

25  clearly established First or Fourteenth Amendment right to free speech.

26  _____

27  [1] Complaint paragraphs 68-85 address Plaintiff's subsequent efforts to obtain a copy
    of the College's "Use of Free Speech Area" form, but go no distance toward stating

28  a constitutional violation.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

### 1.    <u>The Qualified Immunity Doctrine Broadly Protects Public Officials Sued In Their Individual Capacities.</u>

The qualified immunity doctrine protects government officials from civil liability for performance of their discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wood v. Moss*, 134 S.Ct. 2056, 2066-2068 (2014); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 536 U.S. 731, 743 (2011). Under this doctrine, courts may not award damages against a government official in his or her personal capacity unless "the official violated a statutory or constitutional right," and "the right was 'clearly established' at the time of the challenged conduct." *Lane v. Franks*, 134 S.Ct. 2369, 2381 (2014), quoting *al–Kidd*, 563 U.S. at 735. This means that "existing precedent must have placed the statutory or constitutional question <u>beyond debate</u>." *al-Kidd*, 563 U.S. at 741 (emphasis added).

The protection of qualified immunity safeguards "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). If officers of reasonable competence can disagree on the issue, immunity attaches. *Ibid.* The Supreme Court has repeatedly told courts "not to define clearly established law at a high level of generality." *al-Kidd*, 134 S.Ct. at 2084. The clearly established law must be "particularized" to the facts of the case, and "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *White v. Pauly*, 137 S.Ct. 548, 552 (2017); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Courts must not view constitutional rights in the abstract, as repeatedly asserted by Plaintiff in this case, but instead, "in a more particularized, and hence more relevant, sense." (*Id.* at 640.) "In other words, courts adjudicating claims of qualified immunity must look not to constitutional guarantees themselves but to the various doctrinal tests

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

1   and standards that have been developed to implement and to administer those

2   guarantees."[2] *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971,

3   977 (9th Cir. 1998). If the application of a right to a particular set of facts is

4   ambiguous, then even an official who ultimately violated the plaintiff's rights will be

5   entitled to qualified immunity. *Id.*

6   **2.   Defendants Burke, Marmolejo, Dixon-Peters, and Astorga Are**

7   **Entitled To Qualified Immunity.**

8   Plaintiff seeks monetary damages in his Second, Third, Fourth, and Fifth

9   Causes of Action against Defendants Burke, Marmolejo, Dixon-Peters, and Astorga

10   in their individual capacities. However, even if this Court determined that Plaintiff

11   stated a claim for relief under those causes of action, the Defendants are

12   nevertheless entitled to qualified immunity.

13   With respect to each of the Defendants, there is no "clearly established" law

14   in existence which would have put them on notice that the Pierce College Free

15   Speech Area Policy was unconstitutional, regardless of whether it was applied to a

16   student or non-student. *Students for Life USA,* 2015 WL 854866, *4, and *6,

17   rejecting *Roberts v. Haragan*, 346 F.Supp.2d 853 (N.D.Tex.2004). Rather, there is

18   case law supporting the proposition that a college campus is a nonpublic forum, and,

19   to the extent a college has opened a limited public forum for individuals to engage

20   in expressive activity, reasonable time, place, and manner restrictions are permitted

21   and deemed reasonable if they are content-neutral, narrowly tailored to serve a

22   significant governmental interest, and leave open ample alternative channels for

23

24

25   [2] Even the meaning of terms such as "designated public forum" and "limited public

26   forum is unsettled. There remains confusion regarding "what distinction, if any,
      exists between a 'designated public forum' and a 'limited public forum.'"  Some

27   circuit courts view the two as synonyms, while others do not. See, *Bowman* 444

28   F.3d at 975.

- 24 -

communication of the speaker's message. *Clark*, 468 U.S. at 293; *Perry*, 460 U.S. at 46, citing *Widmar*, 454 U.S. at 269-270.

As discussed above, both the District and the Pierce College Free Speech Area Policy meet this legal standard. Furthermore, time, place, and manner restrictions similar to those imposed by the District and Pierce College, including permit requirements and disclosure of the speaker's identity to college administration as a condition for use of a FSA, have been upheld. *Bloedorn*, 631 F.3d at 1236-1237; *Bowman*, 444 F.3d at 980-981. Thus, Defendants did not ignore any provisions of clearly established law of which they should have been aware; there are simply no cases providing clear, much less definitive, guidance on the issues presented in the Plaintiff's Complaint.

Moreover, the Board Rules at issue in this case are derived from a court-approved dismissal of a lawsuit in which similar allegations to those in this case arose at Pierce College. *See* Ex. 2 to RJN. Additionally, the Board Rule concerning designation of FSAs was the subject of previous litigation in *Guengrich v. Barron,* 2011 WL 13116612 (C.D.Cal., May 5, 2011, No. 210CV01045JHNPLAX), which upheld the propriety of arrests made based on a violation of the Board Rule, as well as the local procedures at Los Angeles City College, another of the District's nine colleges. Given this "real world" experience, no Defendant had a basis for believing that any of his or her conduct was anything other than proper. It simply cannot be concluded that "existing precedent must have placed the statutory or constitutional question <u>beyond debate</u>." *al-Kidd*, 563 U.S. at 741 (emphasis added).

## III.   <u>CONCLUSION</u>

Based upon the foregoing, Defendants respectfully request this Court grant the instant Motion to Dismiss in its entirety, without affording Plaintiff leave to amend.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

Dated:  May 24, 2017          ATKINSON, ANDELSON, LOYA, RUUD & ROMO

By:  */s/ Sharon J. Ormond*
_____
Warren S. Kinsler
Sharon J. Ormond
S. Brooke Romero
Attorneys for Defendants Kathleen F. Burke,
Earic Dixon-Peters, William A. Marmolejo, Juan
C. Astorga, Francisco C. Rodriguez, Scott J.
Svonkin, Sydney K. Kamlager, Mike Fong, Mike
Eng, Andra Hoffman, Ernest H. Moreno, and
Nancy Pearlman

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

- 26 -

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

**CERTIFICATE OF SERVICE**

Case Name: Kevin Shaw v. Kathleen F. Burke, et al.

Case No.: 2:17-cv-02386-ODW-PLA

On May 24, 2017, I filed the following document(s) described as **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT [F.R.C.P. 12(B)(1) AND (B)(6)] OR IN THE ALTERNATIVE FOR A MORE DEFINITE STATEMENT [F.R.C.P. 12(E)]; AND MEMORANDUM OF POINTS AND AUTHORITIES** electronically through the CM/ECF system.  All parties on the Notice of Electronic Filing to receive electronic notice have been served through the CM/ECF system.

The party(ies) listed below are currently on the list to receive e-mail notices for this case.

Arthur I. Willner
awillner@leaderberkon.com
David Salazar
dsalazar@leaderberkon.com
LEADER & BERKON LLP
660 S. Figueroa Street, Suite 1150
Los Angeles, CA  90017
Tel:  (213) 234-1750
Fax:  (213) 234-1747

Marieke T. Beck-Coon
marieke@thefire.org
Brynne S. Madway
brynne.madway@thefire.org
THE FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION
510 Walnut Street, Suite 1250
Philadelphia, PA  19106
Tel:  (215) 717-3473
Fax:  (215) 717-3440

☑ **BY EMAIL:**  I have caused the above-mentioned document(s) to be electronically served on the above-mentioned person(s), who are currently on the list to receive e-mail notices for this case.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 24, 2017, at Irvine, California.

_Roxanne Koffman_
ROXANNE KOFFMAN

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL LAW CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
TELEPHONE: (949) 453-4260
FAX: (949) 453-4262

005205.00099
15693546.1

CERTIFICATE OF SERVICE