Arthur I. Willner, State Bar No. 118480
Email: awillner@leaderberkon.com
David Salazar (State Bar No. 310949)
dsalazar@leaderberkon.com
LEADER & BERKON LLP
660 S. Figueroa Street, Suite 1150
Los Angeles, CA 90017
Tel: (213) 234-1750; Fax (213) 234-1747

Marieke Tuthill Beck-Coon (admitted *pro hac vice*)
Email: marieke@thefire.org
Brynne Sasha Madway (admitted *pro hac vice*)
Email: brynne.madway@thefire.org
THE FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473; Fax (215) 717-3440

Attorneys for Plaintiff Kevin A. Shaw

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KEVIN A. SHAW**, | ) Case No. 2:17-cv-02386-ODW-PLA |
| Plaintiff, | ) Honorable Otis D. Wright, II |
| Vs. | ) |
| **KATHLEEN F. BURKE**, *in her individual and official capacities;* **EARIC DIXON-PETERS**, *in his individual and official capacities;* **WILLIAM A. MARMOLEJO**, *in his individual and official capacities*; **JUAN C. ASTORGA**, *in his individual and official capacities;* **FRANCISCO C. RODRIGUEZ**, *in his* | ) **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br> ) **Date:   October 16, 2017** <br> ) **Time:  1:30 p.m.** <br> ) **Dept.:  Courtroom 5D** |

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

1

Plaintiff's Opposition to Defendants' Motion to Dismiss
*Kevin A. Shaw vs. Kathleen F. Burke, et al.*
Case No. 2:17-cv-02386-ODW-PLA

*official capacity*;                          )
**SCOTT J. SVONKIN,** *in his official*      )
*capacity*;                                   )
**SYDNEY K. KAMLAGER**, *in her*             )
*official capacity;*                          )
**MIKE FONG**, *in his official capacity*;   )
**MIKE ENG**, *in his official capacity*;    )
**ANDRA HOFFMAN**, *in her official*         )
*capacity*; **ERNEST H. MORENO**, *in*       )
*his official capacity*;                      )
**NANCY PEARLMAN**, *in her official*        )
*capacity*; and **JOHN DOE**, *in his*       )
*individual and official capacities*,        )
                                              )
          Defendants.                         )
_____      )

Plaintiff Kevin Shaw submits his opposition to Defendants' Motion to Dismiss as follows:

Plaintiff's Opposition to Defendants' Motion to Dismiss

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

# <u>TABLE OF CONTENTS</u>

**Page**

I.   STATEMENT OF FACTS ...............................................................................1

II.   ARGUMENT .................................................................................................3

    A.   Defendants' 12(b)(1) Motion Should Be Denied Because
        Shaw Has Standing To Bring His Claims................................................3

        1.   Because he was subjected to the very policies he challenges,
            Shaw has suffered a concrete and particularized injury-in-fact.....4

        2.   There is a credible risk of future enforcement of the policies. ......4

        3.   Shaw's allegations satisfy the remaining standing elements. ........8

    B.   Eleventh Amendment Immunity Does Not Bar Shaw's Individual
        Capacity Claims. ...................................................................................9

    C.   Defendants' 12(b)(6) Motion Should Be Denied Because Shaw
        Pleads Claims Upon Which Relief Can Be Granted. ...........................9

        1.   Outdoor areas of the LACCD campuses, including Pierce
            College,  are traditional or designated public forums for
            student speech. ...........................................................................10

            a.   The California Education Code affirmatively designates
                community college campuses as open to student
                expression……………………………………………………10

            b.   Even absent designation, open, outdoor areas of campus
                 are traditional or designated public forums ...…………11

        2.   Defendants' Policies are not consistent with rules governing
            traditional or designated public forums. ....................................15

            a.   The policies are not narrowly tailored to serve a
                 significant interest……………………………..…………15

            b.   The policies do not leave open ample alternative
                 channels of communication...…………………….…………17

        3.   Even if Pierce's campus is a nonpublic or limited public
            forum,  Shaw has pled claims on which relief may be granted ...18

i

Plaintiff's Opposition to Defendants' Motion to Dismiss
*Kevin A. Shaw vs. Kathleen F. Burke, et al.*
Case No. 2:17-cv-02386-ODW-PLA

4.  Pierce College's permit requirement is a prior restraint under which College officials have unfettered discretion......................19

D.  The Pierce College Defendants Have Been Properly Joined..............21

E.  The Pierce College Defendants Are Not Entitled to Qualified Immunity. ...........................................................................................24

III.  CONCLUSION ..............................................................................................25

Plaintiff's Opposition to Defendants' Motion to Dismiss

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

Page

## Cases

*ACLU of Nev. v. City of Las Vegas*,
  333 F.3d 1092 (9th Cir. 2003)....................................................................11, 13, 19

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ...........................................................................................24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................21

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979) .............................................................................................5

*Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*,
  482 U.S. 569 (1987) ...........................................................................................18

*Benitez v. Hutchens*,
  2016 U.S. Dist. LEXIS 179445 (C.D. Cal. Sept. 8, 2016)..................................22

*Berger v. City of Seattle*,
  569 F.3d 1029 (9th Cir. 2009)..................................................................19, 20, 21

*Blanchette v. Conn. Gen. Ins. Corps.*,
  419 U.S. 102 (1974) .............................................................................................4

*Bloedorn v. Grube*,
  631 F.3d 1218 (11th Cir. 2011)........................................................................... 20

*Bowman v. White*,
  444 F.3d 967 (8th Cir. 2006. ............................................................................. 20

*Burbridge v. Sampson*,
  74 F. Supp. 2d 940 (C.D. Cal. 1999)...................................................................12

*Bureerong v. Uvawas*,
  922 F. Supp. 1450 (C.D. Cal. 1996).......................................................................3

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

*Canatella v. California,*

   304 F.3d 843 (9th Cir. 2002)...................................................................6

*Colwell v. Bannister,*

   763 F.3d 1060 (9th Cir. 2014).............................................................23

*Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cty. Sheriff Dep't,*

   533 F.3d 780 (9th Cir. 2008)...............................................................24

*Desyllas v. Bernstine,*

   351 F.3d 934 (9th Cir. 2003)...............................................................15

*Flint v. Dennison,*

   488 F.3d 816 (9th Cir. 2007)...............................................................11

*Forsyth v. Nationalist Movement,*

   505 US. 123 (1992)................................................................................19

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*

   528 U.S. 167 (2000)...........................................................................3, 8

*Galvin v. Hay,*

   374 F.3d 739 (9th Cir. 2004)...............................................................18

*Grossman v. City of Portland,*

   33 F.3d 1200 (9th Cir. 1994)...............................................................15

*Guengerich v. Barron,*

   2011 WL 13116612 (C.D. Cal. May 5, 2011) ....................................24

*Hafer v. Melo,*

   502 U.S. 21 (1991) .................................................................................9

*Hartmann v. Cal. Dep't of Corr. & Rehab.,*

   707 F.3d 1114 (9th Cir. 2013)..............................................................23

*Hays Cty. Guardian v. Supple,*

   969 F.2d 111 (5th Cir. 1992)...............................................................12

Plaintiff's Opposition to Defendants' Motion to Dismiss

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

*Healy v. James*,

   408 U.S. 169 (1972) ................................................................10, 16, 19

*Hydrick v. Hunter*,

   669 F.3d 937 (9th Cir. 2012)................................................................25

*Jews for Jesus, Inc. v. City Coll. of S.F.*,

   2009 U.S. Dist. LEXIS 1613 (N.D. Cal. Jan. 12, 2009) ......................12

*Justice for All v. Faulkner*,

   410 F.3d 760 (5th Cir. 2005)................................................................12

*Khademi v. S. Orange Cty. Cmty. Coll. Dist.*,

   194 F. Supp. 2d 1011 (C.D. Cal. 2002) ........................................passim

*Lakewood v. Plan Dealer Publ'g Co.*,

   486 U.S. 750 (1988) ............................................................................20

*Libertarian Party of L.A. Cty. v. Bowen*,

   709 F.3d 867 (9th Cir. 2013).................................................................5

*Lopez v. Candaele,*

   630 F.3d 775 (9th Cir. 2010) .......................................................5, 6, 7

*LSO, Ltd. v. Stroh*,

   205 F.3d 1146 (9th Cir. 2000)...........................................................4, 6

*Lujan v. Defs. of Wildlife*,

   504 U.S. 555 (1992) ..............................................................................8

*McGlone v. Bell*,

   681 F.3d 718 (6th Cir. 2012)................................................................12

*NAACP, W. Region v. City of Richmond*,

   743 F.2d 1346 (9th Cir. 1984)..............................................................19

*OSU Student Alliance v. Ray*,

   699 F.3d 1053 (9th Cir. 2012).......................................................passim

- v -
Plaintiff's Opposition to Defendants' Motion to Dismiss

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,

   460 U.S. 37 (1983) ...........................................................................9, 18

*Pleasant Grove City v. Summum*,

   555 U.S. 460 (2009) ...............................................................................9

*Preminger v. Peake*,

   552 F.3d 757 (9th Cir. 2008).................................................................4

*Pro-Life Cougars v. Univ. of*,

   *Hous.*, 259 F. Supp. 2d 575 (S.D. Tex. 2003)................................12, 17

*Real v. City of Long Beach*,

   852 F.3d 929 (9th Cir. 2017) .................................................................6

*Roberts v. Haragan*,

   346 F. Supp. 2d 853 (N.D. Tex. 2004) ...........................................12, 16

*Rock for Life-UMBC v. Hrabowski*,

   411 F. App'x 541 (4th Cir. 2010) ........................................................4

*Rosen v. Port of Portland*,

   641 F.2d 1243 (9th Cir. 1981)..............................................................19

*Schneider v. New Jersey*,

   308 U.S. 147 (1939) .............................................................................16

*Shuttlesworth v. Birmingham*,

   394 U.S. 147 (1969) .............................................................................19

*Souders v. Lucero*,

   196 F.3d 1040 (9th Cir. 1999)..............................................................15

*Starr v. Baca*,

   652 F.3d 1202  (9th Cir. 2011)............................................................22

*Steffel v. Thompson*,

   415 U.S. 452 (1974) ...............................................................................5

Plaintiff's Opposition to Defendants' Motion to Dismiss

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

*Students for Life USA v. Waldrop*,

    2015 U.S. Dist. LEXIS 23899 (S.D. Ala. Feb. 27, 2015) ..................................... 14

*Susan B. Anthony List v. Driehaus*,

    134 S. Ct. 2334 (2014) ................................................................................................ 5

*Thornhill v. Alabama*,

    310 U.S. 88 (1940) .................................................................................................... 16

*Turner Broad. Sys., Inc. v. FCC*,

    512 U.S. 622 (1994) .................................................................................................. 16

*United Pub. Workers v. Mitchell*,

    330 U.S. 75 (1947) ...................................................................................................... 7

*University of Cincinnati Chapter of Young Americans for Liberty v. Williams*,

    2012 U.S. Dist. LEXIS 80967 (S.D. Ohio June 12, 2012) ................ 13, 15, 16, 17

*Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*,

    536 U.S. 150 (2002) .................................................................................................. 19

*Widmar v. Vincent*,

    454 U.S. 263 (1981) ......................................................................................... 10, 14, 15

## <u>Statutes</u>

42 U.S.C. § 1983 .............................................................................................................. 9

Cal. Educ. Code § 70902(a)(2) ..................................................................................... 21

Cal. Educ. Code § 70902(d) .......................................................................................... 22

Cal. Educ. Code § 76120 ............................................................................................... 11

Plaintiff's Opposition to Defendants' Motion to Dismiss

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   STATEMENT OF FACTS

This lawsuit seeks to vindicate Plaintiff Kevin Shaw's First Amendment rights as a student at Los Angeles Pierce College ("Pierce"), a college in the Los Angeles County Community College District ("LACCD"). The LACCD Board of Trustees maintains Board Rules on freedom of expression (the "LACCD Policy") that classify each of the nine LACCD campuses as a "non-public forum," with the exception of "Free Speech Areas" that are classified as "limited public forums." *See* LACCD Board Rule, Chapter IX, Article IX, "Freedom of Speech," Board Rules 9901, *et seq*., Compl. Ex. A. Each college president is required to designate a "Free Speech Area" on his or her campus for "free discussion and expression by all persons." Compl. Ex. A. Rule 9903 permits, but does not require, a college president to designate more than one such area for students. Rule 9902.11(a) requires that literature distribution take place only within these areas.

Pierce implemented the LACCD Policy by designating a single free speech area for use by both university community members and outsiders, measuring approximately 616 square feet, about .007% of the main campus area. Compl. ¶¶ 41, 46, 53. Before making use of the area, students (and non-students) must complete a permit application obtained from the school's administration. Compl. ¶ 48. Rules relating to the use of the free speech area (the "Pierce Policy") are printed on the permit application, but are not otherwise publicly available. Compl. ¶ 40, Ex. C. The Pierce Policy incorporates the language of District Rule 9902.11, and does not on its face limit the discretion of administrators to deny or approve an application for use of the free speech area. Compl. ¶¶ 49–50. Shaw alleges that there are no other published or publicly available rules relating to free speech or expressive activity on Pierce's campus. Compl. ¶ 40.

On November 2, 2016, Shaw attempted to distribute Spanish-language copies

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

1

Plaintiff's Opposition to Defendants' Motion to Dismiss
*Kevin A. Shaw vs. Kathleen F. Burke, et al.*
Case No. 2:17-cv-02386-ODW-PLA

of the U.S. Constitution outside the free speech area on the Pierce College Mall, a campus thoroughfare. Compl. ¶¶ 14, 56–57. Shortly after arriving, Defendant Doe approached Shaw, telling him he was violating campus policy by being outside the free speech area. Compl. ¶¶ 59–60. When Shaw asked Doe what would happen if he were to continue, Doe said Shaw would be asked to leave campus. Compl. ¶ 61. Doe insisted that Shaw accompany him to the Associated Student Organization ("ASO") office and complete a permit application, which Shaw did. Compl. ¶¶ 60, 62. A few days later, Shaw emailed Pierce administrators stating that he planned to gather petition signatures without prior approval outside of the free speech area, which he did for several hours on November 16 without encountering any Pierce administrators. Compl. ¶¶ 64, 66. While doing so, he observed a large demonstration that formed outside of the free speech area to protest then-President-Elect Donald Trump. Compl. ¶ 66.

Shaw subsequently emailed Defendant Marmolejo, Pierce's Dean of Student Services, to request a copy of the Pierce Policy printed on his November 2 permit application. Compl. ¶¶ 68–72. That application directs individuals who wish to use the free speech area to the Vice President of Student Services Office. Compl. Ex. C, p. 1. Marmolejo forwarded the email to Defendant Astorga, Pierce's Dean of Student Engagement, who informed Shaw that "[t]he use of the Free Speech area [sic] is under my purview[,]" that all individuals using the area must fill out "a free speech use form[,]" and invited Shaw to come see him next time he wished to distribute literature on campus. Compl. ¶¶ 73, 74. Thereafter, it took over two weeks and several attempts for Shaw to obtain a copy of the Pierce Policy from Astorga's office. Compl. ¶ 77.

Shaw wishes to engage in additional expressive activity on campus without seeking permission and without confining his advocacy to a space consisting of far less than 1% of Pierce's main campus area. Compl. ¶ 88. He fears, however, that he

Plaintiff's Opposition to Defendants' Motion to Dismiss

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

will be punished or again forced to confine his speech to the free speech area if he were to encounter an administrator while engaged in such activities.

## II.   ARGUMENT

This is a simple case. On November 2, 2016, Defendants violated the First Amendment by enforcing policies that limit Shaw's clearly established right to engage in constitutionally protected activity. Shaw seeks to engage in similar activity in the future and risks being subjected to the offending policies again. Defendants enacted, implemented, enforced, and have the capacity to rescind the policies in question. Under these circumstances, there can be no reasonable dispute that Shaw is entitled to proceed with his claim for damages, injunctive, and declaratory relief. The court should therefore deny Defendants' motion to dismiss.[1]

## A.   Defendants' 12(b)(1) Motion Should Be Denied Because Shaw Has Standing To Bring His Claims.

Defendants err in arguing that Shaw lacks standing to assert his facial and as-applied challenges to the LACCD and Pierce policies and practices at issue here. To establish Article III standing, a plaintiff must allege that: (1) he has suffered an injury-in-fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) "the injury is fairly traceable to the challenged action of the defendant[s]"; and (3) the injury "is likely to be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Shaw's allegations satisfy these requirements.

---

[1] Defendants' notice of motion references an alternative motion for a more definite statement pursuant to Rule 12(e), but they make no mention of that alternative motion in their Memorandum of Points and Authorities ("Defs.' Mem."). Defendants alternative motion is thus not properly presented, nor have Defendants met their burden to show that Shaw's Complaint is so vague and ambiguous that Defendants "literally cannot frame a responsive pleading." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996).

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiff's Opposition to Defendants' Motion to Dismiss

**1.**     **Because he was subjected to the very policies he challenges, Shaw has suffered a concrete and particularized injury-in-fact.**

Shaw challenges an LACCD Policy that relegates expressive activity on its campuses to a free speech area, and a Pierce Policy that implements the LACCD policy by confining such activity to a tiny portion of campus and requiring speakers to obtain advance approval from the college's administration. Compl. ¶¶ 28–53. Shaw has been subjected to the very policies and practices he seeks to challenge: In November 2016, while engaging in expressive activity on campus, Doe told him that he was violating campus policy; that he needed a permit to engage in free speech activity; and that, once obtained, he would need to confine his speech to the free speech area. Compl. ¶¶ 56–62.

A plaintiff has standing to challenge a policy or rule that he has been subjected to. *See, e.g.*, *Preminger v. Peake*, 552 F.3d 757, 764 (9th Cir. 2008) (having "no trouble concluding that [plaintiff] has direct standing to bring an as-applied First Amendment challenge" to a regulation applied to prevent him from registering voters on government property, and finding his harm was "actual, concrete, and particularized"); *Rock for Life-UMBC v. Hrabowski*, 411 F. App'x 541, 549 (4th Cir. 2010) (student group had standing to bring facial and as-applied challenges to university facilities use policy that led to relocation of group's demonstration). Thus, there can be no reasonable dispute that Shaw has standing to seek retroactive relief regarding Defendants' policies.

**2.**     **There is a credible risk of future enforcement of the policies.**

A litigant is not required to "'await the consummation of threatened injury to obtain preventive relief.'" *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154 (9th Cir. 2000) (quoting *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143 (1974)). Rather, to establish injunctive standing, it is sufficient that a plaintiff "intends to engage in 'a course of conduct arguably affected with a constitutional interest' and that there

is a credible threat that the challenged provision will be invoked against the plaintiff." *Id.* at 1154–55 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). "[W]hen the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing." *Id.* at 1155.

In *Lopez v. Candaele*, the Ninth Circuit articulated several factors that guide whether a plaintiff shows a credible threat of enforcement sufficient to establish an injury-in-fact: (1) whether the plaintiff shows a "reasonable likelihood that the government will enforce the challenged law against them"; (2) whether the plaintiff has established "with some degree of concrete detail, that they intend to violate the challenged law"; and (3) whether the challenged law or rule is applicable to the plaintiff, "either by its terms or as interpreted by the government." 630 F.3d 775, 786 (9th Cir. 2010).

As to the first factor, Shaw has demonstrated that Pierce will likely enforce its unconstitutional policies against him. The government's "preliminary efforts to enforce a speech restriction or its past enforcement of a restriction" is "strong evidence" of a credible threat of state action. *Id.* at 786. Indeed, "past enforcement against the same conduct is good evidence that the threat of enforcement is not 'chimerical.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2345 (2014) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)). Shaw was subjected to the LACCD and Pierce Policies on November 2, 2016, when he was required to apply for a permit, change location, and limit his expressive activity to the free speech area. Compl. ¶¶ 56–63.

Moreover, Pierce's Standards of Student Conduct notify students that violations of college rules regarding the "time, place, and manner of public expression or distribution of materials" can result in disciplinary action. Compl. ¶ 55. This notification lends credibility to the threat of enforcement. *See Libertarian*

- 5 -

*Party of L.A. Cty. v. Bowen*, 709 F.3d 867, 871 (9th Cir. 2013) ("threat of enforcement" requirement satisfied where defendant secretary of state posted challenged regulation on her website as a "requirement" of political petitioners).

Defendants argue that the likelihood of future enforcement is lacking because Shaw and anti-Trump demonstrators were allowed to engage in expressive activity outside the free speech area on November 16. Defs.' Mem. 8–10. But Defendants have not rescinded their policies or disavowed their future enforcement and they are vehemently defending their legality in this litigation. Defs.' Mem. 11, 16. This militates in favor of a finding of standing. *LSO*, 205 F.3d at 1155.[2]

Indeed, Defendants' inconsistent enforcement of their policies *bolsters*, rather than undercuts, Plaintiff's standing to challenge Defendants' policies as a prior restraint because it demonstrates that Defendants' decisions about whether to enforce them are subjective and unpredictable. *See Real v. City of Long Beach,* 852 F.3d 929, 933 (9th Cir. 2017) (when permitting scheme vests unbridled discretion in official, plaintiff may bring facial challenge without first applying for license because the case-by-case nature of as-applied challenges renders authority's discretion effectively unreviewable); *accord Khademi v. S. Orange Cty. Cmty. Coll. Dist.,* 194 F. Supp. 2d 1011, 1019 (C.D. Cal. 2002).

Defendants rely on the Court's finding in *Lopez* that the student plaintiff lacked standing, Defs.' Mem. 6–7, but the policy challenged there had never been

---

[2] Defendants also rely on Shaw's post-November 2 expressive activity to argue that he suffered no chilling effect on his speech and so fails to show a present or future threat of harm. Defs.' Mem. 9-10. This ignores that his speech *was* chilled on November 2 when he acquiesced to Doe's direction to obtain permission for, move to, and remain in the free speech area. Moreover, many countless others might be deterred by Defendants' policies and practices. Thus, in a First Amendment facial overbreadth challenge, a court must take into account the chilling effect on those not before the court who may refrain from speaking because of the rule's very existence. *Canatella v. California*, 304 F.3d 843, 853 (9th Cir. 2002); *see also Khademi v. S. Orange Cty. Cmty. Coll. Dist.*, 194 F. Supp. 2d 1011, 1018 (C.D. Cal. 2002) (in a facial overbreadth challenge, "the general limitation on standing is relaxed because there exists a danger of chilling free speech in society as a whole") (internal quotation marks omitted).

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiff's Opposition to Defendants' Motion to Dismiss

applied to the plaintiff and he faced no threat of its being applied to him in the future. 630 F.3d at 784, 789. Even then, because his speech *arguably* fell within the scope of the policy he challenged, the *Lopez* court explained that he came to "the very edge" of establishing standing because both "[f]ormal and informal enforcement of policies that regulate speech on college campuses raise issues of profound concern[,]" *id.* at 793–94. If the *Lopez* student came to "the very edge," Shaw has surely surpassed it; the offending policies *were* applied to him and he remains subject to them in the future. Shaw easily satisfies the first *Lopez* factor: his allegations demonstrate a "reasonable likelihood that the government will enforce the challenged law against [him]." *Id.* at 786.

As to the second *Lopez* factor, Shaw adequately pleads, "with some degree of concrete detail, that [he] intend[s] to violate the challenged law." *Id.* Shaw has alleged not only that he seeks to engage in expressive activity in violation of both the LACCD and Pierce Policies that were enforced on November 2, but also that he has done so since then and intends to continue doing so in the future. Compl. ¶¶ 56–66, 88. In short, he alleges the intention to engage in the very the kind of activity that triggered application of Pierce's policy and practices on November 2. These allegations are "specific enough so that a court need not 'speculate as to the kinds of political activity the [plaintiffs] desire to engage in . . . ." *Id.* at 787 (quoting *United Pub. Workers v. Mitchell*, 330 U.S. 75, 90 (1947)) (brackets in original). Shaw has "provide[d] adequate details about [his] intended speech" and has gone far beyond the "hypothetical intent to violate the law" that concerned the *Lopez* court. *Id.* (internal quotation omitted).

Finally, Shaw satisfies the third *Lopez* factor: —whether the challenged policy is applicable to the plaintiff, "either by its terms or as interpreted by the government." *Id.* at 786. He has shown that Defendants' policies are applicable to him in both respects. The policies were applied to his expressive activity on

Plaintiff's Opposition to Defendants' Motion to Dismiss

November 2. Compl. ¶¶ 56–62. Later, Defendant Astorga told Shaw that the use of the free speech area was under Astorga's purview and advised him to "come see me next time you would like to distribute any materials and I would be more than happy to provide you with the paperwork for you [sic]." Compl. ¶ 74. Thus, Defendants have expressly indicated that they will impose the challenged policies on Shaw's expressive activity.

### 3. Shaw's allegations satisfy the remaining standing elements.

Shaw's allegations demonstrate that his injury is "fairly traceable" to the challenged actions of Defendants because he has shown "a causal connection between the injury and the conduct complained of" and his injury is "not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation omitted). Defendants' policies have restricted his expressive activity and "as written, could possibly prevent [Shaw] from engaging in certain constitutionally protected activities, restrict [his] manner of expression, and/or expose [him] to disciplinary action for engaging in certain protected activities." *Khademi*, 194 F. Supp. 2d at 1019.

Shaw's allegations also demonstrate that his injury is likely to be redressed by a favorable decision because the challenged policies and practices unconstitutionally limit his expressive rights. Striking down, enjoining, or declaring these policies unconstitutional would allow Shaw and other students to fully enjoy their First Amendment rights. *See Friends of the Earth*, 528 U.S. at 185–86 ("for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress"); *Khademi,* 194 F. Supp. 2d at 1019 (where college policy on campus speech as written could restrict constitutionally protected speech, a favorable decision enjoining enforcement "will likely redress Plaintiffs' injuries").

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

**B.    Eleventh Amendment Immunity Does Not Bar Shaw's Individual Capacity Claims.**

Defendants' argument that the Eleventh Amendment bars claims for monetary damages against state government agents sued in their official capacity is irrelevant because Shaw asserts damages claims against only those Defendants sued in their individual capacity. *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991) (Eleventh Amendment immunity does not bar claims for damages in personal capacity suits under 42 U.S.C. § 1983 for actions taken under color of state law).

**C.    Defendants' 12(b)(6) Motion Should Be Denied Because Shaw Pleads Claims Upon Which Relief Can Be Granted.**

Shaw has properly pled viable First Amendment claims against all Defendants.  His expressive activity was protected under the First Amendment and was restricted by unconstitutional policies.

Under forum analysis doctrine, public property historically associated with unfettered exercise of expressive activities, such as streets and parks, are traditional public forums. *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009). Areas that have been intentionally opened for public discourse are considered designated public forums. *Id.* In these type of forums, the government may put in place content-neutral time, place, and manner restrictions on speech, but such restrictions must be narrowly tailored to serve a significant government interest and must leave open ample alternative channels of communication. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45-46 (1983). Speech restrictions on public property that is not a traditional or designated public forum—limited or non-public forums—must be reasonable and viewpoint neutral. *Id.* at 46.

The LACCD Policy deems all but so-called "Free Speech Areas" to be nonpublic forums in which expressive activity is prohibited. *See* Compl. ¶¶ 35–39. Pierce sets aside a single free speech area, measuring approximately 616 square feet

Plaintiff's Opposition to Defendants' Motion to Dismiss

and comprising .007% of the main campus area, Compl. ¶¶ 45, 46, 53, 71, 72, and requires individuals to obtain a permit before using the space, Compl. ¶ 48. These restrictions cannot be squared with time-honored free speech principles on public campuses.[3] The outdoor campus forum at issue here is, *at minimum*, a designated public forum with respect to students. Moreover, regardless of the type, the policies at issue here fail under the scrutiny applicable in any forum.

### 1. Outdoor areas of the LACCD campuses, including Pierce College, are traditional or designated public forums for student speech.

Because the "college classroom with its surrounding environs is peculiarly 'the marketplace of ideas,'" the Supreme Court long ago rejected the notion that "First Amendment protections should apply with less force on college campuses than in the community at large." *Healy v. James*, 408 U.S. 169, 180 (1972). Although a college need not "make all of its facilities equally available to students and nonstudents alike," "the campus of a public university, at least for its students, possesses many of the characteristics of a public forum." *Widmar v. Vincent*, 454 U.S. 263, 267 n.5 (1981). Thus, in these areas, there is a "significant interest in the widest latitude for free expression and debate consonant with the maintenance of order." *Healy*, 408 U.S. at 171. Accordingly, the California legislature, the Ninth Circuit, and the overwhelming majority of courts to address the issue set a high bar for the protection of student speech on public campuses.

### a. The California Education Code affirmatively designates community college campuses as open to student expression.

The California Education Code directs the governing board of community college districts to adopt reasonable time, place, and manner regulations on student

---

[3] Indeed, the California State University's Office of General Counsel's *Handbook of Free Speech Issues* states: "having exclusive 'free speech zones' where all free speech activity must occur will not be sustained."  Calif. State Univ., Office of General Counsel, *Handbook of Free Speech Issues* 8 (May 2009), *available at* https://www.calstate.edu/gc/Docs/FreeSpeechHandbook.pdf.

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

expression on campuses that "*shall not prohibit the right of students to exercise free expression* including, but not limited to … the distribution of printed materials or petitions" except in certain instances of legally unprotected speech, lawful college regulation, "or the substantial disruption of the orderly operation of the community college. . . ." Cal. Educ. Code § 76120 (emphasis added).

In *OSU Student Alliance v. Ray*, the Ninth Circuit relied on an Oregon state regulation to find that a public campus was "*at least* a designated public forum[,]" and noted that "[i]n the past, we have suggested that college campuses may be traditional public fora for students . . . ." 699 F.3d 1053, 1062, 1063 n.4 (9th Cir. 2012) (emphasis added). The regulation provided that the university grounds were "open to the public and the University community for speech activities except any grounds designated for authorized access only[,]" and the court found that "the state has 'intentionally dedicate[d] [campus] property to expressive conduct,' thereby creating a designated public forum." *Id.* at 1063 (quoting *Flint v. Dennison,* 488 F.3d 816, 830 (9th Cir. 2007)).

Similarly here, the Education Code evidences the intent to dedicate campus property to students' expressive conduct and thereby creates a designated public forum.

### b. Even absent designation, open, outdoor areas of campus are traditional or designated public forums.

A court seeking to categorize government property must look at "the actual use and purposes of the property," "the area's physical characteristics," and the "traditional or historic use of both the property in question and other similar properties[.]" *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1100 (9th Cir. 2003). "[T]he factors emphasized by the courts consistently reflect two underlying considerations[,]" namely, whether the expressive activity is incompatible with the

Plaintiff's Opposition to Defendants' Motion to Dismiss

forum and a "commitment by the courts to guarding speakers' reasonable expectations that their speech will be protected." *Id.*

Applying these principles, the Ninth Circuit and its sister circuits have generally agreed that the open, outdoor areas of public campuses are either traditional or designated public forums with respect to students' speech. *See OSU*, 699 F.3d at 1063 n.4.[4]  This Court has followed suit. *Khademi*, 194 F. Supp. 2d at 1024 (C.D. Cal. 2002) (holding that "there is no doubt" the facilities and areas of community college campuses generally accessible to the public were designated public forums); *Burbridge v. Sampson*, 74 F. Supp. 2d 940, 947–48 (C.D. Cal. 1999) (same). In a case involving non-student plaintiffs, the Northern District of California went further, finding that "[a] primary purpose of a college or university is to contribute to the exchange of ideas" and that "sidewalks and plazas on a publicly-supported college campus constitute a public forum…." *Jews for Jesus, Inc. v. City Coll. of S.F.*, Civ. No. 08-03876, 2009 U.S. Dist. LEXIS 1613, at *3, *9 (N.D. Cal. Jan. 12, 2009); *accord Pro-Life Cougars v. Univ. of Hous.*, 259 F. Supp. 2d 575, 582 (S.D. Tex. 2003) (finding that the university generally and plaza at issue were "public fora designated for student speech").

Several courts have held that these open, outdoor areas are traditional or designated public forums for student speech even when a college has by policy placed them off limits by creating free speech areas. Thus, in *Roberts v. Haragan*,

---

[4] *See Justice for All v. Faulkner*, 410 F.3d 760, 769 (5th Cir. 2005) (striking down literature distribution policy challenged by student organization because "[a] university campus is clearly an appropriate place for communication of views on issues of political and social significance") (internal quotation omitted); *Hays Cnty. Guardian v. Supple*, 969 F.2d 111, 117 (5th Cir. 1992) (reasoning that campus functions for its students as a "place where people may enjoy the open air or the company of friends and neighbors in a relaxed environment … and suggests an intended role more akin to a public street or park than a non-public forum.") (internal quotation marks and citations omitted); *cf. McGlone v. Bell*, 681 F.3d 718, 732 (6th Cir. 2012) (in the context of non-student plaintiffs, finding that "[t]he perimeter sidewalks along [college's] campus are traditional public forums and all other open areas are designated public fora.").

Plaintiff's Opposition to Defendants' Motion to Dismiss

the court enjoined the free speech areas at Texas Tech University, holding that "[t]o the extent the campus has park areas, sidewalks, streets, or other similar common areas, these areas are public forums, at least for the University's students, irrespective of whether the University has so designated them or not." 346 F. Supp. 2d 853, 861 (N.D. Tex. 2004). The court explained that open campus areas could be thought of as traditional or designated forums for student use. *Id.* at 861 n. 8. The court acknowledged that, given the school's policy, these areas were not "designated public forums" in the typical use of that term; "[r]ather, the 'designated' character results from the mere fact that the University has 'designed' its campus to include areas that … correspond directly to their counterpart, traditional public forums outside the campus." *Id.* (internal citations omitted).

Similarly, in *University of Cincinnati Chapter of Young Americans for Liberty v. Williams*, the court enjoined a university's confinement of "demonstrations, picketing, and rallies" to a free speech area comprising 0.1% of campus. Civ. No. 12-155, 2012 U.S. Dist. LEXIS 80967, at *29–30 (S.D. Ohio June 12, 2012). Although university policy labeled its campus a limited public forum, the court held that the sidewalks and open outdoor areas of campus were designated public forums as to students. *Id.* at *18.

The LACCD's labels—which go even further than the unconstitutional *Williams* policy, declaring all college property to be non-public forums and the free speech areas to be limited public forums—cannot control the analysis here. *See City of Las Vegas,* 333 F.3d at 1104 ("[T]he intent of a government to create a nonpublic forum has no direct bearing upon traditional public forum status."). What matters is the nature and purpose of the property. *Id.* at 1100. Generally accessible outdoor areas of a campus physically and functionally resemble the examples of quintessential traditional public forums, which are considered inherently compatible with expressive activity. *See id*. at 1101 ("[W]hen a property is used for open public

- 13 -

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

access or as a public thoroughfare, we need not expressly consider the compatibility of expressive activity because these uses are inherently compatible with such activity."). Shaw alleges that Pierce's many open areas and sidewalks—not just its 616-square-foot free speech area—are compatible with expressive activity without compromising campus operations. Compl. ¶¶ 46, 54.

Rather than contending with the cases cited above, Defendants cite an out-of-circuit case holding that a college campus' perimeter was not a traditional public forum. *Students for Life USA v. Waldrop*, Civ. No. 14-0157, 2015 U.S. Dist. LEXIS 23899 (S.D. Ala. Feb. 27, 2015). But the policy there opened the vast majority of the university's campus for expressive activity. *Id.* at *2. It was the mirror image of the situation here: that policy allowed speech on all but a small part of campus; the policy here *disallows* speech on all but a tiny part of the Pierce campus. Moreover, the plaintiffs in *Waldrop* did not argue that even if the campus's perimeter was not a traditional public forum, it should be deemed a designated public forum, *see id.* at *6, *16–17, an argument that Shaw makes here.

Defendants also rely on cases involving non-students' access to college campuses. Defs.' Mem. 19.[5] These cases are beside the point, as Shaw is a Pierce student, and *Widmar* and lower courts have held that schools can regulate non-students' expressive access to public campuses to a greater extent than they can limit students' access to such areas. *See Widmar*, 454 U.S. at 267 n. 5; *OSU*, 699

---

[5] At the same time, Defendants claim—adding facts outside the Complaint—they were unaware Shaw was a student on November 2. Defs.' Mem. 3. However, the policies in question apply to students. The LACCD Policy directs the designation of at least one free speech area for use by "all persons." Compl. Ex. A, LACCD Policy § 9902. The Pierce Policy provides, "Any person who is found to have expressed speech in violation of this section may be subject to the sanctions applicable respectively to students, staff, faculty, or visitors." Compl. Ex. C. Moreover, Defendants' argument that students are entitled to no greater free speech protections than non-students demonstrates that they interpret their Policies to apply with equal force to both sets of individuals. Defs.' Mem. 19. And they argue their policies can be permissibly applied to the Plaintiff going forward, knowing full well that he is a student.

Plaintiff's Opposition to Defendants' Motion to Dismiss

F.3d at 1063 n. 4; *Williams*, 2012 U.S. Dist. LEXIS 80967 at *12, *18; *Roberts*, 346 F. Supp. 2d at 861. Even *Souders v. Lucero*, which Defendants cite, Defs.' Mem. 13, involves a non-student plaintiff and distinguishes between the expansive rights of students and more restricted rights of non-students. 196 F.3d 1040, 1044 (9th Cir. 1999) (discussing *Widmar*).

Finally, Defendants rely on *Desyllas v. Bernstine*, 351 F.3d 934 (9th Cir. 2003). Defs.' Mem 13. But *Desyllas* involved students posting fliers on columns, in violation of a university policy prohibiting unapproved postings on campus structures because of the damage such postings can cause. *Id.* at 938. A prohibition on permanently affixing items to campus buildings cannot be analogized to an all-encompassing restriction on the core protected speech at issue here.

The weight of the case law demonstrates that the sidewalks, thoroughfares, lawns, and other generally accessible areas of Pierce's campus are public forums for student speech, despite the LACCD Policy's characterization of district campuses as nonpublic forums.

**2.     Defendants' Policies are not consistent with rules governing traditional or designated public forums.**

In a public forum or designated public forum, a content-neutral restriction on protected speech is unconstitutional if it fails to meet any part of the test requiring it to be narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication. *See Grossman v. City of Portland*, 33 F.3d 1200, 1205 (9th Cir. 1994) ("The failure to satisfy any single prong of this test invalidates the requirement."). Defendants' policies fail to meet all of them.

**a.     The policies are not narrowly tailored to serve a significant interest**.

A regulation of speech is not sufficiently tailored when it fails to narrowly address problems of legitimate government concern and "sweeps within its ambit"

protected speech. *Thornhill v. Ala*, 310 U.S. 88, 97 (1940). Furthermore, a government interest is not significant if it is merely "conjectural" rather than "real." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994). Accordingly, defendants must do more than "assert[] interests [that] are important in the abstract. . . ." *Id*. The "undifferentiated fear or apprehension of disturbance [is] not enough to overcome the right to freedom of expression" on a college campus. *Healy*, 408 U.S. at 191 (internal quotation omitted).

Even assuming Defendants' interests in "avoiding disruption, insuring safety, comfort, or convenience of the public, and maintaining grounds that are attractive and intact" are significant, Defs.' Mem. 14, Shaw's allegations demonstrate that the restrictions at issue are not narrowly tailored to serve these interests. Defendants claim that LACCD's policy is necessary to avoid "safety and sanitation issues," Defs.' Mem. 14. But at this stage in the litigation, that is nothing more than conjecture. The Supreme Court held decades ago that the prevention of littering is insufficient to justify a prohibition on leafleting in a public thoroughfare. *Schneider v. State*, 308 U.S. 147, 162–65 (1939). Furthermore, Defendants allow students to walk around the open, outdoor areas of the LACCD campuses when they are undoubtedly holding material that could be littered at will. Restricting students' movement *only* when they are engaged in protected expression cannot be defended as keeping campus grounds attractive.

Defendants also argue that "[w]ithout the designation of free speech areas, individuals would be able to congregate on walkways outside of doors and buildings . . . ." Defs.' Mem. 14. Both the *Williams* and *Roberts* courts rejected this argument as a defense of free speech areas on public college campuses, reasoning that the schools could draft rules targeted at actual disruption, such as regulations on large crowds, sound amplification near buildings, or blocking building access. *Williams*, 2012 U.S. Dist. LEXIS 80967 at *20–*22; *Roberts*, 346 F. Supp. 2d at

- 16 -

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

870 n.20. The *Williams* court noted, "At least one other Ohio public university has been able to satisfy similar interests with nothing more than an anti-disruption policy." 2012 U.S. Dist. LEXIS 80967 at *21 n.3.

Equally baseless is Defendants' claim that, without the challenged restrictions, students would "compete for use of college grounds." Defs.' Mem. 14. It is difficult to see how limiting free expression to a tiny area of campus would *decrease* competition for the use of college grounds.

Indeed, the LACCD and Pierce policies sweep so broadly that they cannot be deemed narrowly tailored to anything. In striking down a community college district policy "that prohibit[ed] students from distributing writings 'inside all buildings including classrooms' and in 'parking lots,'" this Court observed, "because the provisions are so sweeping, Defendant[s] will be unable to show that they are narrowly tailored to anything." *Khademi,* 194 F. Supp. 2d at 1034 (internal citations omitted); *see also Williams*, 2012 U.S. Dist. LEXIS 80967 at *20 ("[T]he mere fact that the [permit requirement for speech outside free speech area] applies to *all* student speech raises constitutional concerns."); *Pro-Life Cougars*, 259 F. Supp. 2d at 583-84 (college ban on all "potentially disruptive" expression on plaza exercised "such sweeping power" as to illustrate lack of narrow tailoring). Shaw has pled that the policies at issue here are similarly broad, affecting all but a small portion of each campus. Compl. ¶¶ 35, 36, 40–49, 53.

### b.  The policies do not leave open ample alternative channels of communication.

Defendants' policies also fail to leave open ample alternative channels of communication. While Board Rule 9902 states that each free speech area should be "located where there is a normal flow of student traffic," there is no requirement that the area be a certain size, either absolutely or relative to the size of the campus

or the number of students. At Pierce, the end result is that the vast majority of the campus is off-limits to expressive activity.

A small free speech area cannot accommodate multiple (or larger) student groups wishing to respond publicly and in a timely manner to current events. Moreover, designating specific areas for speech prevents students from using the locations where they can best reach their intended audience, or locations that hold particular significance to their message. *See Galvin v. Hay*, 374 F.3d 739, 750 (9th Cir. 2004) ("The Court has recognized that location of speech, like other aspects of presentation, can affect the meaning of communication and merit First Amendment protection for that reason").

Defendants also argue that Article X, Board Rules 91001, *et seq.*, for which they request judicial notice, creates additional areas in which students can engage in expressive activity. It does not. Rule 9903 of the LACCD Policy grants district college presidents discretion to designate more than one free speech area on their campus. *See* Compl. ¶ 39. For students wishing to distribute literature outdoors, Article X does no more than reiterate the existence of that discretion. *See* Rule 91002. Shaw alleges, and the Pierce Policy confirms on its face, no such additional areas have been designated for student expression on Pierce's campus. Compl. ¶ 53, Ex. C. Defendants have pointed to nothing in Article X or the Complaint to show that other channels of communication exist for students who wish to engage in basic free speech activities in the open, outdoor areas of Pierce's campus.

### 3. Even if Pierce's campus is a nonpublic or limited public forum, Shaw has pled claims on which relief may be granted.

In both nonpublic forums and limited public forums, regulations designed to preserve the forum for its intended purpose must still be reasonable. *Perry Educ. Ass'n*, 460 U.S. at 46. "[V]irtual 'First Amendment Free Zone[s]'" have thus been struck down in nonpublic forums. *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*,

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

482 U.S. 569, 574 (1987) (striking down free speech prohibition in airports, even though considered nonpublic forums); *see also City of Las Vegas*, 333. F.3d at 1106 (upholding district court ruling that total ban on leafleting was unconstitutional even if pedestrian street at issue was a nonpublic forum).

Restricting all student speech to tiny free speech areas and effectively designating the vast majority of public college campuses to be no-speech zones cannot be deemed reasonable in an environment that is the quintessential "marketplace of ideas." *Healy*, 408 U.S. at 180.

### 4.   Pierce College's permit requirement is a prior restraint under which College officials have unfettered discretion

"Even if the issuance of permits . . . is a ministerial task . . . a law requiring a permit to engage in such speech constitutes a dramatic departure from our national heritage and constitutional tradition." *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150, 166 (2002); *accord Forsyth v. Nationalist Movement*, 505 U.S. 123, 132-33 (1992) (striking down permit policy on First Amendment grounds for lacking "articulated standards"). Thus, "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150–51 (1969).

"The presumptive invalidity and offensiveness of advance notice and permitting requirements stem from the significant burden that they place on free speech." *Berger v. City of Seattle*, 569 F.3d 1029, 1037 (9th Cir. 2009) (*en banc*); *Rosen v. Port of Portland*, 641 F.2d 1243, 1249 (9th Cir. 1981) (noting that prior restraints "prevent speech that is intended to deal with immediate issues"); *NAACP, W. Region v. City of Richmond*, 743 F.2d 1346, 1356 (9th Cir. 1984) ("simple delay may permanently vitiate the expressive content of a demonstration"). Accordingly, the Ninth Circuit "ha[s] refused to uphold registration requirements that apply to

Plaintiff's Opposition to Defendants' Motion to Dismiss

individual speakers or small groups in a public forum." *Berger*, 569 F.3d at 1039. And "no court has held that a standardless policy passes muster." *OSU*, 699 F.3d at 1065. Just as importantly, a standardless permit requirement lends itself to viewpoint discrimination. *See Lakewood v. Plan Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988) (noting that without standards it is difficult for courts to determine in any particular case whether the licensor is permitting favorable, and suppressing unfavorable, expression.").

Regardless of the type of forum, the Pierce Policy represents an unconstitutional prior restraint. On its face, the policy lacks any standards to guide administrative discretion and applies to anyone using the free speech area, even individuals and small groups seeking to distribute literature or ask their fellow students to sign a petition. Compl. ¶¶ 47–52, Ex. C.

Defendants argue that their policy is permissible because it authorizes the denial of a permit only when the free speech area is already reserved. Defs.' Mem. 19. That argument carries no weight because this proffered limitation does not appear in the policy itself. *See Lakewood,* 486 U.S. at 770 ("The doctrine [forbidding prior restraints] requires that the limits the city claims are implicit in its law be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice.").

Defendants rely on *Bloedorn v. Grube*, 631 F.3d 1218 (11th Cir. 2011), and *Bowman v. White*, 444 F.3d 967 (8th Cir. 2006), to argue that the policy is constitutional. Defs.' Mem. 18–19. Those cases involved non-students requesting preliminary injunctions, so the courts were in a position to make findings of fact and found that the policies sufficiently limited governmental discretion. *See Bloedorn*, 631 F.3d at 1237 (discussing evidence); *Bowman*, 444 F.3d at 980–81 (same). Here, Defendants have filed a motion to dismiss, and the allegations in Plaintiff's Complaint must be taken as true. Shaw has alleged that the Pierce Policy

Plaintiff's Opposition to Defendants' Motion to Dismiss

consists of nothing other than the permit he was forced to sign and does not set forth any standards that would limit administrators' discretion. Compl. ¶ 50. Plaintiff has properly pled that the Pierce Policy is an unconstitutional prior restraint.

The Pierce Policy suffers from another fatal flaw. Requiring speakers to identify themselves to and seek advance permission from the college effectively prohibits anonymous and spontaneous speech. Compl. ¶¶ 48, 51, Ex. C. Defendants argue that speakers must reveal their identity to administrators only, who do not share the information with others. *See* Defs.' Mem. 20. In addition to falling outside the allegations of the Shaw's Complaint, this assertion is beside the point: "the requirement that potential speakers identify themselves to the government, and the concomitant loss of anonymity, is one of the primary *evils* the Supreme Court cited when it struck down the permitting requirement in *Watchtower Bible*." *Berger*, 569 F.3d at 1044 (emphasis in original).

**D.    The Pierce College Defendants Have Been Properly Joined.**

Defendants argue that Shaw has not asserted a sufficient "causal connection between Defendants' involvement in the development and/or implementation of Pierce's free speech policy/practices" and his injury. Defs. Mem. 8.[6] Contrary to Defendants' assertions, Shaw pleads sufficient facts as to each Defendant's policy-making, decision-making, and administrative authority, alleging "factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[7]

---

[6] Defendants make the causal-connection argument in the context of standing. Defs.' Mem. 8. This is not, however, a standing requirement; it is a substantive requirement emanating from Section 1983. *See, generally, Ashcroft v. Iqbal*, 556 U.S. 662, (2009).

[7] Defendants assert that "[n]o college employee has the authority to establish policy as a matter of law" pursuant to Cal. Educ. Code § 70902(a)(2), which provides that "[t]he governing board of each community college district shall establish rules and regulations" for the operation of the district colleges. Defs.' Mem. 7–8. They omit, however, that § 70902(d) of the Code goes on to provide: "Wherever in this section or any other statute a power is vested in the governing board,

1
2
3
4
5

> "[E]ven absent 'overt personal participation,' a supervisor may be liable under Section 1983 if he or she created, promulgated, implemented, advanced, or was otherwise responsible for the continued operation of a policy that 'requires subordinates to commit constitutional violations,' and enforcement of the policy (either by the defendant-supervisor or his/her subordinates) proximately caused the plaintiff's constitutional injury."

6
7
8
9
10
11
12
13

*Benitez v. Hutchens*, Civ. No. 12-550, 2016 U.S. Dist. LEXIS 179445, at *13 (C.D. Cal. Sept. 8, 2016) (quoting *OSU Student Alliance*, 699 F.3d at 1076), R&R adopted, 2016 U.S. Dist. LEXIS 179442 (C.D. Cal. Dec. 26, 2016); *see also Starr v. Baca*, 652 F.3d 1202, 1205–06  (9th Cir. 2011) (a supervisor may be individually liable for "action or inaction in the training, supervision, or control of his subordinates, his acquiescence in the constitutional deprivations of which the complaint is made, or conduct that showed a reckless or callous indifference to the rights of others") (internal quotations omitted).

14
15
16
17
18

Turning first to Defendant Burke, Shaw has pled that she is the President of Pierce College, Compl. ¶ 15. Pursuant the LACCD Policy, Burke is responsible for "designat[ing] an area or areas" that make up the free speech area. Compl. ¶ 36, Ex. A. Burke is therefore responsible for the designation of free speech areas (for students and the public) and the only administrator who can expand their size.

19
20
21
22
23

Next, Shaw alleges that Defendant Dixon-Peters is Pierce's Vice President of Student Services. Compl. ¶ 16. The Pierce Policy states: "Individuals planning to distribute material on campus are required to go to the Vice President of Student Services Office . . . ." Compl. Ex. C. Thus, Dixon-Peters is directly responsible for enforcing the permitting scheme that deprived Shaw of his constitutional rights.

24
25
26
27
28

Similarly, Defendant Marmolejo is Dean of Student Services, the office designated to process individuals wishing to use the free speech zone. Shaw has

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

the governing board of a community college district . . . may adopt a rule delegating the power to the district's chief executive officer or any other employee or committee as the governing board may designate[,]" which is precisely the case here. Cal. Educ. Code § 70902(d).

alleged that Marmolejo plays a substantial role in the administration and enforcement of the relevant policies. Compl. ¶ 17. Moreover, Marmolejo was aware of Shaw's search for a copy of Pierce's unwritten rules governing the free speech area and referred him to Defendant Astorga, who informed Shaw that he and other speakers are subject to unconstitutional restrictions on speech. Compl. ¶¶ 70–74.

Finally, Astorga, Pierce's Dean of Student Engagement, was unquestionably involved in the deprivation of Shaw's constitutional rights. Compl. ¶¶ 18, 74. Astorga informed Shaw that "[t]he use of the Free Speech area is under [Astorga's] purview.'" Compl. ¶ 74. Shaw also alleges that Astorga directed Pierce employees not to provide Shaw with a copy of the Pierce Policy. Compl. ¶¶ 79–80. Accordingly, Astorga has relevant policy-making authority and took part in the deprivation of Shaw's constitutional rights.

Defendants are likewise necessary parties for purposes of Shaw's claims for equitable relief, where a showing of personal involvement is unnecessary:

> A plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation. Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief.

*Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (internal citations omitted); *see also Colwell v. Bannister*, 763 F.3d 1060, 1070–71 (9th Cir. 2014). Even if they are not individually liable for the deprivation of Shaw's constitutional rights (which they are), the Pierce Defendants would still be properly joined because they are the administrators who would provide the requested relief. Compl. ¶¶ 15–18 (alleging that each of the Pierce Defendants has policy-making and enforcement authority over the "Free Speech Area").

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

**E.    The Pierce College Defendants Are Not Entitled to Qualified Immunity.**

"Qualified immunity involves a two-step inquiry: (1) whether the officer's conduct violated a constitutional right; and (2) whether that right was clearly established when viewed in the context of this case." *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cty. Sheriff Dep't*, 533 F.3d 780, 793 (9th Cir. 2008).  There need not be a case directly on point; the contours of the right need be sufficiently clear that a reasonable official would understand his actions violated that right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Shaw's First Amendment rights were clearly established. As discussed above, courts spanning the course of the last fifteen years consistently and clearly hold that college and university campuses are, at a minimum, designated public forums for their students and that the open, outdoor areas of college campuses cannot be closed to student expression. *See supra* pages 9–19. And it has long been established that permitting schemes in such forums cannot leave government officials with unfettered discretion or restrict the expressive activity of individuals or small groups of peaceful demonstrators. *See supra* pages 19–21.

Defendants also argue that they are entitled to qualified immunity because the LACCD Policy was the result of earlier litigation that led to a "court approved dismissal" in *Rosen v. Los Angeles Pierce College*, Ex. 2 to Defs.' Req. for Judicial Not., and was the subject of litigation in *Guengerich v. Baron*, CV-01045, 2011 WL 13116612 (C.D. Cal. May 5, 2011). Defs.' Mem. 25. But *Rosen* involved "off campus groups" and the case was dismissed because the College had repealed the challenged policy. *See Rosen* Joint Dismissal, Ex. 2 to Defs.' Req. for Judicial Not. *Guengerich* likewise dealt with the rights of "outsiders." *See* 2011 WL 1311612, at *9 ("These precedents establish a college's right to limit which areas of its facilities are open for expressive activities by campus outsiders.").

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

1    The case law establishes that students must generally be allowed to engage in
2  expressive activities in outdoor areas of college campuses. It was thus clearly
3  established on November 2, 2016, that the Defendants' policies were
4  unconstitutional, depriving Defendants of any claim to qualified immunity from
5  Shaw's claim for damages. Even if Defendants were entitled to qualified immunity,
6  Plaintiff's claims for equitable relief would remain. *See, e.g., Hydrick v. Hunter*,
7  669 F.3d 937, 939–40 (9th Cir. 2012).

8  **III.    <u>CONCLUSION</u>**

9    Shaw respectfully requests that the Court deny Defendants' Motion to
10 Dismiss or, that if Defendants' Motion is granted, Shaw be granted leave to amend.

11

12 Dated: September 25, 2017          LEADER & BERKON LLP

13

14                                    By: */s/  Arthur I. Willner*
                                      Arthur I. Willner
15                                    Attorneys for Plaintiff Kevin Shaw
                                      Email: awillner@leaderberkon.com
16                                    David Salazar (State Bar No. 310949)
                                      dsalazar@leaderberkon.com
17                                    LEADER & BERKON LLP
18                                    660 S. Figueroa Street, Suite 1150
                                      Los Angeles, CA 90017
19                                    Tel: (213) 234–1750; Fax (213) 234–1747

20                                    Marieke Tuthill Beck-Coon
21                                    Email: marieke@thefire.org
                                      Brynne Sasha Madway
22                                    Email: brynne.madway@thefire.org
23                                    THE FOUNDATION FOR INDIVIDUAL
                                      RIGHTS IN EDUCATION
24                                    510 Walnut Street, Suite 1250
25                                    Philadelphia, PA 19106
                                      Tel: (215) 717–3473; Fax (215) 717–3440
26

27

28

LEADER & BERKON LLP
ATTORNEYS AT LAW
LOS ANGELES

**CERTIFICATE OF SERVICE**
Case Name: *Kevin Shaw v. Kathleen F. Burke, et al.*
Case No.:    **2:17-cv-02386-ODW-PLA**

I declare:

On September 25, 2017, I electronically filed the following document(s):

**Plaintiff's Opposition to Defendants' Motion to Dismiss**

I have caused the above-mentioned document(s) to be electronically served using CM/ECF system which will send notification of such filing to the following email addresses:

| | |
|---|---|
| Warren S. Kinsler State Bar No. 103265<br>WKinsler@aalrr.com<br>Sharon J. Ormond State Bar No. 195812<br>SOrmond@aalrr.com<br>S. Brooke Romero  State Bar No. 312448<br>BRomero@aalrr.com<br>ATKINSON, ANDELSON, LOYA,<br>RUUD & ROMO<br>12800 Center Court Drive South,<br>Suite 300<br>Cerritos, California 90703-9364<br>Telephone:  (562) 653-3200<br>Fax:  (562) 653-3333 | Attorneys for Defendants Kathleen F. Burke, Earic Dixon-Peters, William A. Marmolejo, Juan C. Astorga, Francisco C. Rodriguez, Scott J. Svonkin, Sydney K. Kamlager, Mike Fong, Mike Eng, Andra Hoffman, Ernest H. Moreno, and Nancy Pearlman |

☒    **BY ELECTRONIC MAIL:** I have caused the above-mentioned document(s) to be electronically served on the above-mentioned person(s), who are currently on the list to receive e-mail notices for this case.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on September 25, 2017, at Los Angeles, California.

*/s/  Sandra Alvarenga*
Sandra Alvarenga

- 26 -
Plaintiff's Opposition to Defendants' Motion to Dismiss