O

# United States District Court
# Central District of California

| | |
|---|---|
| KEVIN A. SHAW,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>KATHLEEN F. BURKE, in her individual and official capacities; EARIC DIXON-PETERS, in his individual and official capacities; WILLIAM A. MARMOLEJO, in his individual and official capacities; JUAN C. ASTORGA, in his individual and official capacities; FRANCISCO C. RODRIGUEZ, in his official capacity; SCOTT J. SVONKIN, in his official capacity; SYDNEY K. KAMLAGER, in her official capacity; MIKE FONG, in his official capacity; MIKE ENG, in his official capacity; ANDRA HOFFMAN, in her official capacity; ERNEST H. MORENO, in his official capacity; NANCY PEARLMAN, in her official capacity; and JOHN DOE, in his individual and official capacities,<br><br>　　　　　　Defendants. | Case No. 2:17-cv-02386-ODW-PLA<br><br>**ORDER GRANTING, IN PART, PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT [52]** |

## I.　INTRODUCTION

　　On March 28, 2017, Plaintiff Kevin Shaw filed a Complaint against Defendants Kathleen F. Burke, Earic Dixon-Peters, William A. Marmolejo, Juan C. Astorga,

Francisco C. Rodriguez, Scott J. Svonkin, Sydney K. Kamlager, Mike Fong, Mike Eng, Andra Hoffman, Ernest H. Moreno, Nancy Pearlman, and one fictitiously named John Doe[1] ("Doe") (collectively, "Defendants"). Plaintiff alleges six causes of action arising from violations of his right to free speech as a student at Los Angeles Pierce College ("Pierce"). (Compl. ¶¶ 89–137, ECF No. 1.) After repeatedly stipulating to extend the deadline to discover Doe's real name and file an amended complaint naming him, Plaintiff identified Doe in February 2018. (Mot. Leave Amend ¶ 4, ECF No. 52; Decl. of Arthur I. Willner ("Willner Decl.") ¶ 9, Ex. 8, ECF No. 52-1.) Plaintiff subsequently filed a Motion for Leave to File an Amended Complaint on April 9, 2018. (*See* Mot. Leave Amend.) For the following reasons, the Court **GRANTS, in part,** and **DENIES, in part,** Plaintiff's Motion.[2]

## II. BACKGROUND

### A. Factual Background

Plaintiff is pursuing his associate's degree at Pierce, one of nine community colleges within the Los Angeles Community College District ("LACCD"). (Compl. ¶ 14.) In keeping with broader LACCD policies, Pierce limits free speech on campus to a small, designated "Free Speech Area." (*Id.* ¶¶ 40–45.) The Free Speech Area is noted on the campus map; however, Pierce does not "publish rules or regulations regarding free speech or expressive activity specific to its campus." (*Id.* ¶¶ 40, 43.) The rules regarding use of the Free Speech Area are only printed on applications for use of the area. (*Id.*) It "is not open to spontaneous or anonymous speech[,] because individuals must fill out an application for use of [it] . . . and identify themselves and

---

[1] The Court notes that "[g]enerally, Doe pleading is improper in federal court." *Othman v. Globe Indem. Co.*, 759 F.2d 1458, 1463 (9th Cir. 1985), overruled on other grounds by *Bryant v. Ford Motor Co.*, 844 F.2d 602 (9th Cir. 1987.) However, "the relation back provisions of state law . . . govern a federal cause of action pursuant to 42 U.S.C. § 1983." *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 768 (9th Cir. 1989); *see also Lindley v. General Elec. Co.*,̦ 780 F.2d 797, 800 (9th Cir. 1986). Accordingly, Plaintiff's request to include an additional, fictitiously named defendant, is proper. *See Merritt*, 875 F.2d at 768.

[2] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

their organizations . . . ." (*Id.* ¶ 51.) Even when students receive a permit for its use, the permit itself contains additional rules and regulations governing student speech. (*Id.* ¶¶ 43–44, Ex. C.)

Plaintiff first became aware of these requirements on November 2, 2016. A school administrator, named in Plaintiff's Complaint as fictitious Defendant Doe, informed Plaintiff that he and his friends—members of the student group Young Americans for Liberty—were violating school policy by handing out Spanish-language copies of the U.S. Constitution and discussing free speech issues with Pierce students outside of the Free Speech Area. (*Id.* ¶¶ 14, 56–60.) Doe required Plaintiff to accompany him to the office to fill out and sign a permit application. (*Id.* ¶ 62.) He also refused to provide Plaintiff with a signed copy of the permit application. (*Id.* ¶ 63.)

In the weeks following that initial encounter, Plaintiff repeatedly requested a copy of his application for a permit. (*Id.* ¶¶ 68–85.) The administration repeatedly denied Plaintiff's request for a copy and rebuffed his attempts to meet with administration. (*Id.* ¶¶ 74–79.) Plaintiff finally obtained a copy of his application and the rules on December 8, 2016. (*Id.*) After reviewing them, he became fearful that further exercise of his right to free speech on Pierce's campus would lead to discipline for violating the Standards of Student Conduct or removal from campus by the Sheriff's office. (*Id.* ¶ 88.)

**B.   Procedural Background**

On March 28, 2017, Plaintiff filed a Complaint, alleging five causes of action for violations of his free speech rights, pursuant to 42 U.S.C. § 1983, and one cause of action for related declaratory relief, pursuant to 28 U.S.C. § 2201. (*Id.* ¶¶ 89–137.) Plaintiff brought the suit against numerous Pierce College administrators, the LACCD Chancellor, and members of the LACCD Board of Trustees (collectively, "Answering Defendants"). (*See* Compl.) He also alleged claims against "John Doe," the unnamed college administrator discussed above. (*See id.* ¶ 5.)

1  Plaintiff thought he identified the administrator in July 2017.  (Willner Decl. Ex. 3.)  However, Answering Defendants told Plaintiff that he did not have the right person and that they "did not have the authority to disclose Defendant John Doe's identity."  (Willner Decl. Ex. 4.)  The parties stipulated to, and the Court ordered, additional time to identify and serve the unnamed administrator, on three occasions.  (ECF Nos. 31, 32, 34, 36, 46.)  Throughout this period, Plaintiff continued his efforts to identify Doe, even sending videos to Defendants to help identify him.  (Willner Decl. ¶¶ 6–7.)

On February 26, 2018, Answering Defendants served their Initial Disclosures on Plaintiff.  (Willner Decl. Ex. 8.)  Defendants' initial disclosures identified Charles Johnson, whose testimony would include:

> [I]nteractions he had with Plaintiff . . . including those wherein he informed Plaintiff about the Free Speech Area after observing Plaintiff distributing materials in the campus Mall, as well as subsequent conversations regarding obtaining a copy of Plaintiff's completed "Use of Free Speech Area" form.

(*Id.* ¶ 6.)  On March 7, 2018, before the previously extended deadline expired, Plaintiff asked Answering Defendants if they would stipulate to allow Plaintiff to file an amended complaint naming Johnson in place of Doe.  (Willner Decl. Ex. 2.)  Answering Defendants agreed.  (*Id.*)

Plaintiff emailed Answering Defendants a proposed stipulation and First Amended Complaint on March 22, 2018, one week after the previously stipulated March 15 deadline.  (*Id.* Ex. 9.)  On March 27, 2018, Answering Defendants replied, explaining they would no longer stipulate to the amendment since the March 15 deadline had passed.  (*Id.* Ex. 10.)  Plaintiff argues that Answering Defendants never indicated that their agreement to stipulate was subject to Plaintiff meeting the March 15 deadline.  (*Id.* Ex. 11.)

On April 9, 2018, Plaintiff moved for leave to file his First Amended Complaint.  (*See* Mot. Leave Amend.)  Answering Defendants opposed on April 16,

2018, (Opp'n, ECF No. 56), and Plaintiff filed a Reply on April 23, 2018. (Reply, ECF No. 57.)

### III. LEGAL STANDARD

Amendments to a party's complaint are permitted as a matter of course within twenty-one (21) days of service of a motion or twenty-one (21) days of service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). However, if a party can no longer amend as a matter of course, the amending party must obtain "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). When determining whether leave to amend should be granted, the Court considers: (1) bad faith, (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment, and (5) prior amendment to the Complaint. *Pepsi-Cola Metro. Bottling Co. v. Ins. Co. of N. Am.*, CV 10-2696 SVW (MANx), 2010 WL 11549719, at *1 (C.D. Cal. Nov. 18, 2010).

A court should "freely give leave [to amend] when justice so requires." *Id.*; *see also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) (noting that the party opposing amendment bears the burden of showing prejudice). However, the court may deny leave to amend "[w]here the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original complaint . . . ." *E.E.O.C. v. Boeing Co.*, 843 F.2d 1213, 1222 (9th Cir. 1988).

### IV. DISCUSSION

Rule 15's "policy of favoring amendments to pleadings is to be applied with extreme liberality." *Zendel v. ABC Video Prods.*, CV 10-2889-VBF(Ex), 2011 WL 13214018, at *2 (C.D. Cal. May 16, 2011). There is a presumption that leave to amend should be granted. Here, Plaintiff requests leave to amend to include claims against Johnson, whose identity was previously unknown. (Mot. Leave Amend 4–6.) Defendants argue that this should not be permitted because of Plaintiff's bad faith and undue delay, as well as the futility of such an amendment. (*See* Opp'n.)

### A. Undue Delay

The first factor the Court considers is whether Plaintiff unduly delayed in seeking to amend the Complaint. *See Griggs,* 170 F.3d at 880. Undue delay requires inquiry into "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990). In considering this, the Court looks to whether the moving party justified "their delay in moving to file an amended complaint." *Id.* However, "delay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981). The Court must also find bad faith or prejudice. *Id.*

Here, Plaintiff took steps to identify the Doe Defendant, and, in July 2017, thought he had identified him. (Mot. Leave Amend 17–18; Willner Decl. Ex. 3.) Answering Defendants then told him he was incorrect, but refused to provide Doe's actual identity. (*Id.* Ex. 4.) Plaintiff sent Answering Defendants video footage to help identify him, but they again refused to assist in the correct identification. (*Id.* ¶¶ 6–7.)

Answering Defendants argue that Plaintiff knew the first name of Doe prior to ever filing suit, which demonstrates undue delay. (*See* Opp'n 11.) However, Answering Defendants repeatedly stipulated to the existence of a good faith reason to extend the deadline for Plaintiff to file an amended complaint. (*See* ECF Nos. 31, 34, 46.) In light of Plaintiff's documented efforts to identify Doe and Defendants' repeated stipulations to allow amendment, the Court finds that Answering Defendants have not produced sufficient evidence to demonstrate that Plaintiff unduly delayed in seeking to amend the Complaint. Therefore, this factor weighs in favor of granting leave to amend.

### B. Bad Faith

The Court next considers any display of bad faith by Plaintiff. *Griggs*, 170 F.3d at 880. Answering Defendants' only attempt to demonstrate "bad faith" by the Plaintiff centers on Plaintiff's failure to meet the March 15, 2018 filing deadline.

(Opp'n 14.) However, bad faith requires more than this. *See, e.g. Bonin v. Calderon*, 59 F.3d 815, 846–47 (9th Cir. 1995) (finding bad faith where a party attempted to amend seven months after the court took the case under submission); *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987) (finding bad faith where defendant sought to add a plaintiff solely to destroy diversity jurisdiction). Answering Defendants' allegations amount, at most, to negligence on the part of the Plaintiff and certainly fall far short of any demonstration of bad faith, especially where Answering Defendants initially agreed to allow the amendment. (*See* Opp'n 15.) Thus, this also weighs in favor of leave to amend.

## C. Prejudice to the Opposing Party & Prior Amendment

The court next considers whether Plaintiff has previously amended the Complaint and whether allowing amendment would be prejudicial to the Answering Defendants. *Pepsi-Cola*, 2010 WL 11549719, at *1. This is Plaintiff's first attempt to amend the Complaint. (*See* Docket.) Additionally, Answering Defendants do not even attempt to argue that the amendment would be prejudicial. (*See generally* Opp'n.) Both these factors also support granting leave to amend.

## D. Futility of Amendment

Finally, Answering Defendants assert that leave to amend should be denied because it is futile. (*Id.*) It is well-established that the Court need not accommodate futile amendments. *Newland v. Dalton*, 81 F.3d 904, 907 (9th Cir. 1996); *see also United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1502 (9th Cir. 2001) (internal citation omitted) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). A proposed amendment is futile when, "before discovery is complete . . . [,] no set of facts can be proved under the amendment which would constitute a valid claim or defense." *Breakdown Servs., Ltd. v. Now Casting, Inc.*, 550 F. Supp. 2d 1123, 1132 (C.D. Cal. 2007). Such is not the case for all of Plaintiff's claims here.

1  As a preliminary matter, Answering Defendants argue that, "to the extent this Court found the Pierce College Defendants to be entitled to both Eleventh Amendment and [q]ualified [i]mmunity, [Johnson] would likewise be immune from monetary damages in both his individual and official capacities."  (Opp'n 16.) Answering Defendants do not, however, address the possibility that declaratory or injunctive relief could be granted based upon Johnson's actions.  (*See id.* 16–17.) Thus, regardless of whether qualified immunity applies here, leave to amend is not futile because some of the relief Plaintiff seeks from Johnson survives a qualified immunity analysis.  (*See, e.g.*, Compl. ¶ 132.)

The Court agrees with Answering Defendants that—for the same reasons the Court already explained in its Order Denying, In Part, and Granting, In Part, Defendants' Motion to Dismiss—Johnson is immune from suit for monetary relief. (ECF No. 45.)  Plaintiff notes that Answering Defendants specifically excluded Defendant Doe (now Johnson) from their Motion to Dismiss.  (Memo in Support Mot. Dismiss 1, ECF No. 22.)  However, it would be futile to permit Plaintiff to amend the Complaint to include claims for monetary relief, which are barred on qualified immunity grounds.  (Order, ECF No. 45.)  Thus, the Court **GRANTS** Plaintiff leave to amend his Complaint to name Johnson, inasmuch as he brings claims for injunctive or declaratory relief against him.  However, the Court **DENIES** Plaintiff leave to amend his Complaint as to his claims for monetary relief because they are barred on qualified immunity grounds.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS, in part,** and **DENIES, in part,** Plaintiff's Motion for Leave to File an Amended Complaint.  (ECF No. 52.) The Court **GRANTS** leave to amend the Complaint as to Plaintiff's claims for injunctive and declaratory relief against Johnson.

//

//

8

1  //
2  //
3  //
4  //
5  //
6  However, the Court **DENIES** leave to amend as to the monetary damages claims
7  against Johnson because leave would be futile.  The Court **ORDERS** the Plaintiff to
8  file the First Amended Complaint **no later than May 18, 2018.**

**IT IS SO ORDERED.**

May 1, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**